SERENA L. POWERS *vs.* THOMAS MITCHELL.

Sagadahoc.    Opinion June 3, 1885.

*Practice. Exceptions. Evidence. Expert testimony. Physicians.*

If counsel think his client's rights are being prejudiced, by the opposing counsel exceeding the proper license of an advocate in the closing argument to the jury, he should then interpose an objection. The objection comes too late after verdict.

A plaintiff cannot complain that she was required on cross-examination to answer questions to show that she commenced the action and attached the defendant's property without first notifying him of her claim for damages.

Exceptions cannot be sustained to the admission of a question, alleged to embrace, hypothetically, facts not in evidence, when the exceptions and evidence reported do not show that there was no evidence in the case tending to prove these facts.

A question, calling for the opinion of a physician as to the effect of an injury to a female in view of " the character of her health as she described it, and as you know it to be before the injury," is objectionable when it does not appear that the physician heard the testimony of the female, nor what personal knowledge, if any, he had of her health.

Exceptions cannot be sustained to the exclusion of admissible testimony when it appears that the excepting party was not thereby aggrieved.

It is admissible to call for the opinion of physicians and show by them that they should expect a greater injury from a direct blow than from a glancing one.

It is clearly proper for a medical expert to be asked what is the tendency of modern medical science upon the subject of concussion of the spine, whether it is to enlarge or restrict.

ON motion to set aside the verdict and on exceptions.

This was an action of the case for damages for a personal injury sustained on the twenty-ninth day of December, 1879, by

a collision with the defendant's horse and sleigh, driven by him on State street, in Augusta. The case has been at the law court before, and is reported in 75 Maine, 364.

The verdict, at the last trial, was for the defendant, and the plaintiff alleged exceptions to the following admissions and exclusions of testimony, the exceptions being numbered in parentheses:

Serena L. Powers, plaintiff, on cross-examination by O. D. Baker, Esq., counsel for defendant, was asked: . .

(No. 1.) Ques. Was the attachment of Captain Mitchell's cow and horses and all the rest of the property, made by your direction in this suit?

To which question plaintiff's counsel objected, but the court overruled the objection, and she answered.

Ans. It was.

. . . . . . .

Defendant's counsel then proceeded to ask plaintiff:.

(No. 2.) Ques. After that interview in which Captain Mitchell sent this gentlemanly, kind message to Mr. Sanborn, and after you say you had no knowledge that he knew that you claimed in any way to be injured; — after that time and before putting on this attachment for ten thousand dollars, did you in any way communicate to him, or cause to be communicated to him, that you claimed any injury?

Objected to by plaintiff's counsel and admitted, subject to the objection of plaintiff.

Ans. I didn't.

. . . . . . .

Dr. Israel T. Dana, called by plaintiff, on cross-examination, was asked:

. . . . . . .

(No. 3.) Ques. If a lady were engaged for substantially eight years; in the neighborhood of eight hours a day; substantially losing no time in that period, in the employment of the needle, and more or less of the sewing machine; would or not, that tend directly to the development of dyspeptic symptoms; — predispose a person to dyspepsia?

Objected to by the plaintiff and admitted by the court, subject to the objection of the plaintiff.

Ans. I would say with regard to that, that I should qualify the statement "tend directly." The only way in which it would tend to dyspepsia, would be just as it would tend to a dozen other diseases, — by weakening the state of the system.

On re-direct examination, Dr. Dana was asked by counsel for plaintiff :

. . . . . . .

Ques. I understood you to say in reply to Mr. Baker on cross-examination, that whether all the symptoms which you found in this case, might not arise from some disorder which would produce reflex or sympathetic trouble of the spine? Your answer was that you thought, when you raise the question of bare *possibility*, you would say, *yes*. Whether the symptoms which were described to you by the patient, 'might not arise from a disorder which would produce reflex or sympathetic trouble of the spine ; might they not possibly take place ; might not they result from sympathetic irritation?

Ans. Yes, sir ; they might.

Ques. Would it be probable?

Ans. In the case of two conditions so much alike as those in their symptoms, one would be governed in the choice by the existence or not of any obvious cause, and what cause it was.

Ques. Assuming that the symptoms described to you by the patient, did follow a blow of the nature I have described to you, would you say it was possible that they might all have been produced by the coincidence of the sympathetic or reflex irritation of the spine, irrespective of the blow?

Ans. I would say that if that set of symptoms are admitted to have existed, and to come into existence after the blow, — speedily after the blow, as has been described, that it would be vastly more probable that they resulted from the blow, than from any coincident reflex spinal irritation.

(No. 4.) Ques. Will you state the degree of probability or improbability of this condition of things which are described, being brought about in the case of a woman just as she described

herself to be; the character of her health as she described it, and as you know it to be, prior to the injury, — *not* assuming her to be a perfectly healthy woman; — by the injury?

Objected to by defendant's counsel, and excluded by the court, subject to the objection of the plaintiff.   [Plaintiff noted exception.]

•      •      •      •      •      •      •

Rowena C. M. Goddard, called by plaintiff, on direct examination, testified that plaintiff was in her employment as cook and as seamstress, for four years from June, 1872, to 1876; also at intervals from 1876 until a few days before the accident, but never afterwards.   She was then asked by plaintiff's counsel:

•      •      •      •      •      •      •

(No. 5.)   Ques.   While she was in your employment, did she, to your recollection, complain either of headache, cold feet, pain in the back, neck or arms, restlessness, bad dreams or disturbed sleep, irregularities, weakness of the eyes, prickling or creeping sensations in the flesh, throbbing or beating in the back, loss of appetite, pain and difficulty in bending the spine or neck, or numbness of the arms or legs?

Objected to by the defendant's counsel and excluded.  Plaintiff's objection, to the exclusion, noted.

Dr. Charles A. Packard, called by the defendant's counsel, was asked on direct examination:

•      •      •      •      •      •      •

(No. 6.)   Ques.   If a person were in a sedentary life, pursued for eight years consecutively, where the person worked at sewing and a part of the time upon the sewing machine, for some eight hours a day; going out sometimes only once in one or two weeks; sometimes two or three times in a week.   Would or not, that be a sufficient cause to produce dyspeptic troubles in the patient?

Objected to and admitted.   Exception of plaintiff noted.

Ans.   I think it would be likely to produce dyspepsia.

•      •      •      •      •      •      •

(No. 7.)   Ques.   Suppose a patient had this spinal irritation, produced by a dyspeptic cause, or by that, in combination with

a scrofulous tendency, would you expect sleeplessness and restlessness to be a symptom or indication of that disease; and how commonly?

Objected to and admitted, subject to the objection. Plaintiff's objection noted.

Ans. I should expect it to be found under those conditions.

.     .     .     .     .     .     .

(No. 8.) Ques. Would you expect a material difference in the medical results of a blow, — of two blows; one of which was such as I have described in a previous question, by the forward end of the thill, a direct blow; the second of which was produced, not by the end of the thill at all, but by the under side of the thill of the advancing sleigh, glancing at an angle over the extreme left hand corner of the other sleigh, having no effect or shock of any kind upon the person in the advancing sleigh?

Objected to by plaintiff's counsel, and admitted, subject to the objection. Plaintiff's objection noted.

Ans. I should expect a direct blow to be productive of much more serious consequences than the glancing blow described.

(No. 9.) Ques. Would you expect such a glancing blow on the corner of the sleigh, as I have indicated in my last question, to produce in the person sitting in the sleigh struck, a concussion of the spine?

Objected to and admitted, subject to the objection. Plaintiff's objection and exception noted.

Ans. I shouldn't expect it to produce so severe an injury.

.     .     .     .     .     .     .

### Re-direct Examination.

(No. 10.) Ques. Is the tendency of the latest medical science, and since Erricson's publication, to enlarge, or greatly restrict those injuries called "concussion of the spine?"

Objected to and admitted, subject to the objection. Plaintiff's objection noted.

Ans. I never read Erricson. My impression is from the general knowledge I have on the subject that the investigations that have been made since that time, have tended to throw out a

great many cases of, so called, concussion of the spine; — to restrict the matter to a more scientific basis.

. . . . . . .

Dr. A. J. Fuller, called by defendant, testified, on direct examination:

. . . . . .

(No. 11.) Ques. If the patient rode from the place of accident, two miles, then got out of her sleigh, went into the house, went up stairs, came down to tea as usual, took breakfast next morning, what would you think that indicated as to the person having received concussion of the spine?

Objected to and admitted. Plaintiff's objection noted.

Ans. If she were a patient of mine, I should think the concussion of the spine had been very slight, if any; and should feel highly gratified that she was able to get on so well.

. . . . . . .

(No. 12.) Ques. Supposing the blow were not of the direct nature we have spoken of, but were produced by the under side of the thill, glancing at an angle over the extreme left hand corner of the sleigh, so as not to stop the advancing sleigh in its course, or communicate any shock to the occupant of the advancing sleigh; would you expect a glancing blow of that kind to be able to produce concussion of the spine in the person sitting in the sleigh that was struck, if no part of her person were touched by the advancing sleigh?

Objected to and admitted. Plaintiff's objection noted.

Ans. I shouldn't consider the chance of an injury to be nearly as much from a glancing blow, as it would by a direct blow.

. . . . . . .

Dr. George E. Brickett, called by defendant, testified on direct examination:

. . . . . .

(No. 13.) Ques. With what confidence would you entertain that opinion, assuming those facts to be true?

Objected to and admitted, subject to the objection of plaintiff.

Ans.   When I say there was no concussion whatever, it is to my mind positive that she did not have any.

. . . . . . .

(No. 14.)   Ques.   Will you tell the jury your judgment as a medical man, with reference to whether there would be a difference, and in what respects, in the medical results, between striking a blow with the end of the thill such as we have spoken of, and a glancing blow with the under side of the thill over the left hand corner, not coming in contact with the person of the plaintiff?

Objected to and admitted, subject to the objection of plaintiff. Plaintiff's exceptions noted.

Ans.   In a general way, it seems to me there is a great difference between a direct blow in the back, and the glancing blow you have spoken of.   There is a very great difference.

. . . . . . .

(No. 15.)   Ques.   What is the tendency of modern science, medical science, upon this subject of concussion of the spine ; is it to enlarge or restrict?

Objected to and admitted, subject to the objection of plaintiff. Plaintiff's exception noted.

Ans.   The tendency is, by the best authorities and experience and observation, to eliminate all these cases of slight causes of concussion, and the result is to bring them down as near as possible, to the symptoms that indicate no other disease, so that the symptoms of spinal concussion and the symptoms of spinal irritation, almost any physician can distinguish the one from the other.   It is getting to be well understood, and it is in accordance with my experience, ( which may not be good for anything. ) I have observed these things for a good many years, by the examination of men who come to obtain pensions, — of nervous spinal disease.

Objected to and admitted.   Plaintiff excepted to the ruling.

Wit.   There is a great deal better narrowing down to a more narrow limit in the symptoms, to what it used to be.   Years ago, spinal irritation and spinal troubles covered a multitude of symptoms.   The tendency is to make the thing understood by

physicians of common observation, by the symptoms presented, to know reasonably whether there is a spinal irritation, or disease of the spine.

*C. W. Goddard and A. M. Spear*, for the plaintiff.

*Baker, Baker and Cornish*, ( *E. W. Whitehouse*, with them, ) for the defendant.

LIBBEY, J.  This case comes up on motion and exceptions.

The ground insisted on in support of the motion is the misconduct of the defendant's counsel in his closing argument, in asserting facts not in evidence, and not competent evidence if offered, and arguing thereon.   The motion cannot be sustained. If the defendant's counsel, as claimed by the plaintiff, exceeded the proper license of an advocate in his argument to the jury, it was the duty of the plaintiff's counsel, if he thought his client's rights were being prejudiced, to interpose objection ; and then if the judge declined to interfere the plaintiff might have exceptions. *Rolfe* v. *Rumford*, 66 Maine, 564.  And if the judge stopped counsel and required him to desist and retract, and he refused to do so, the plaintiff might have his remedy by motion.   But by electing to interpose no objection and rely upon the advantage he might have by counter assertion and argument in reply, he waived his right to exception or motion.   *Learned* v. *Hall*, 133 Mass. 417.   The case is similar in principle to a case of disqualification or misconduct of a juror.   If known to a party during the trial, and he wishes to take advantage of it, he must interpose his objection.   He cannot elect to take his chance of a verdict in his favor and if he fails then raise the objection.

Several exceptions were taken to the admission and exclusion of evidence.   Those relied on will be examined in the order in which they are presented by the plaintiff's counsel.    1 and 2 relate to the conduct of the plaintiff in causing the action to be commenced before notifying the defendant of her claim for damages, and causing his property to be attached.   The officers' return of the attachment was in the case.   The questions were put to the plaintiff on cross ex-amination.   She cannot complain that she was required to answer them.

3 and 6 are similar in principle. The objection to the questions urged by the learned counsel is that they embraced hypothetically, facts not in evidence. It is sufficient to say that the exceptions and the evidence reported do not show that there was no evidence in the case tending to prove those facts. Nor does it appear that the objections to the questions were for that cause. To lay the foundation for exceptions on that ground the attention of the judge should have been called to the specific objection, so that he could determine, as he must in the first instance, whether there was sufficient evidence tending to prove the facts stated to authorize the questions.

4. The question put to Dr. Dana and excluded, was objectionable because it does not appear that he had heard all the testimony of the plaintiff, nor does it appear what personal knowledge he had, if any, of her health.

5. We are inclined to the opinion that the question put to Mrs. Goddard, and excluded, was competent on the question of damages; but if so the plaintiff is not aggrieved, as the jury found the defendant not guilty, and the question of damages became of no importance.

8, 9, 12 and 14 are alike in principle and may be considered together. They call for the opinion of the physicians as to the physical effects, upon the person of blows received in the manner specified. Their answers were, in substance, that they should expect a greater injury from a direct blow than from a glancing one. We think the subject was within the range of the experience of medical experts, accustomed to observe the effect of blows upon the human body, and that the evidence was competent.

10 and 15. The subject to which the questions put to Dr. Packard and Dr. Brickett relate is clearly a proper one for the opinion of medical experts. No question is made as to their qualifications as such. The questions and answers were competent.

The case has been four times tried to the jury with two disagreements, and two verdicts for the defendant. The litigation

should not be further prolonged without some substantial reason. Upon a careful examination of the whole case as presented, we see no good cause for disturbing the verdict.

<em>Motion and exceptions overruled.</em>

PETERS, C. J., DANFORTH, EMERY and FOSTER JJ., concurred.