COOK v. DOUD.

1. **JURY TRIAL — ARGUMENT OF COUNSEL.—** Counsel, in argument before the jury, may not comment upon matters of fact that are not in evidence. Subject to this general rule trial courts should, in the exercise of a reasonable discretion, favor the freest and fullest discussion.

2. **WAIVER OF OBJECTIONS — PRACTICE IN SUPREME COURT.—** When opposing counsel refrains from objecting at the time to improper argument, and the trial court afterwards refuses relief, reviewing tribunals, invoking a rule analogous to that of estoppel, frequently decline also to interfere.

3. **MOTIONS FOR NEW TRIAL — DISCRETION OF TRIAL COURTS.—** Trial courts are vested with a large discretion in determining motions for a new trial, and, unless there be an illegal exercise of such discretion or a clear abuse thereof, appellate courts refuse to interfere.

4. **SAME — COMMENTS OF COUNSEL ON THE ABSENCE OF EXCLUDED EVIDENCE.—** Where, in action for assault, evidence as to the relations of the parties prior to the assault has been excluded, it is, within the discretion of the court to grant a new trial on account of remarks of defendant's counsel commenting on the absence of such evidence, and intended to prejudice the jury against plaintiff by producing the impression that there was great provocation to the assault.

*Appeal from District Court of Arapahoe County.*

DEFENDANT, COOK, sent word to plaintiff, Doud, that a party wished to speak with him at a certain hotel in the city. Plaintiff repaired to the place appointed and was immediately assaulted by defendant, in the presence of

several by-standers, with a raw-hide riding-whip, receiving blows upon the head, shoulders, face and back. Plaintiff clinched with defendant. A short struggle ensued, when plaintiff was thrown to the floor and there held by defendant until others interfered and put an end to the affray.

It is unnecessary to embody anything further in the statement of facts, save the following extracts, which form the basis of the opinion, from the argument of Mr. Patterson, counsel for defendant in the court below:

"Gentlemen of the jury: As I suggested in the opening statement, no man of ordinary, common experience in the affairs of this world will hesitate to conclude but that there was an antecedent to that affair; and, although it is the law in this state that we should not be permitted to show what that antecedent was, I will always believe that it should be the law, and, if it is not, then a law should be made. * * * It seems to me, gentlemen, that, if counsel for plaintiff in this case desired to secure for him a large roll of greenbacks, as a poultice to his wounded feelings, out of the pocket of Mr. Cook, that these men would have said, when we offered to show what transpired upon the part of the man towards Cook before the happening of this affair,— they would have said: 'Yes, if there is anything.' * * * And, therefore, gentlemen of the jury, I have a right to say, as I do say, that it would have been more manly if, instead of these gentlemen constantly saying, 'I object, I object, I object,' when we offered to prove the relation that existed between the parties before the morning of the 10th of May, if they had said: 'Yes, we feel that Mr. Doud was without fault in this matter, and we have no objection to having his conduct investigated, and everything in connection with this transaction laid bare.' But, gentlemen of the jury, they did not see fit to do it, and, presenting Mr. Doud before you in this way, they say to you that they expect you to commence on the morning

of May 10th; that they do not propose to have you in-
vestigate for a single moment any act or course of con-
duct on the part of Mr. Doud towards Mr. Cook before
that time.   *   *   *   I say, gentlemen of the jury, that,
when they come into court in this light, they come into
court under false pretenses.   They attempt to make the
jury believe that their client was without fault; that it
was, in the language of the attorney who addressed you,
a brutal and unprovoked assault.   Yet at the same time,
when we offered to lift the veil for the purpose of show-
ing what preceded it, they object, and the court sustained
them; and, in the face of this record, they say you must
go on the theory that Doud was blameless, as guiltless as
an infant, and has done nothing whatever to warrant
this assault upon him.   I say that sort of an argument
and that sort of procedure is a fraud upon the jury, and
a fraud upon the court, and should have no influence
upon the jury except to induce them to turn their faces
against a proposition that is as bald and unwarrantable
as this.   *   *   *   No, gentlemen of the jury.   To my
mind, this is as evident and plain a transaction as ever
passed before my mental vision,— the conduct of this
man, goading Mr. Cook on to the step that he took.
*   *   *   How are you to determine how this man's feel-
ings were injured?   How do you know anything about
them?   They would not let us prove anything about
them.   *   *   *   He does not come before you honestly.
He did not present his case to you in a friendly way.   He
does not lift the curtain, and let you see his inside.   He
does nothing but smuggle himself in.   He says: 'I claim
the protection of the law, and will not let the jury see
anything that antedated this affair on the 10th.'   *   *   *
Talking about the indignities that have been heaped
upon a member of the legal profession, I do not believe
that a scheme of this sort could win.   In view of the
fact, gentlemen, that they themselves closed the door to
investigation, that they themselves put a bar across the

entrance, that they themselves refused to allow this jury
to know what the course of conduct of this man Doud
towards Cook has been; to say whether or not this was
a case in which he was driven by persecution to show his
displeasure, and to give this man to understand that a
better course of conduct would be better for him in the
future. One of the witnesses said that Cook said to him:
'If you promise to behave in the future, I will let you
up.' Another said he declared this man had cheated him
out of $500. Another of them said that Mr. Cook said
he would not be hounded by any cur of a lawyer, and
scarcely a word of protest out of the mouth of this man
Doud. It shows that there is something behind it and
around it that these people are closing out, and they want
to get a verdict upon a mere technicality; and that would
be a disgrace to justice, if the true relation of these men
could be made to appear. * * * The court says that
you, gentlemen of the jury, are the sole judges of what
this amount should be; and I have no hesitation in say-
ing, from what has crept out,— the declarations of Cook
at the time, charging this man with pursuing and perse-
cuting him, the fact that they must shut the door, and
put a bar across the entrance so that you could not see
what the real matter was,— all go to justify me in as-
serting that one cent would be ample damages, because
it carries with it the heavy expense of this trial."

Messrs. PATTERSON & THOMAS, for appellant.

Mr. A. L. DOUD, pro se.

CHIEF JUSTICE HELM delivered the opinion of the court.

The present action is for damages growing out of an
assault and battery. The case was tried to a jury, and a
verdict was returned in favor of plaintiff for the sum of
$200. Upon motion for a new trial this verdict was set

aside, and thereupon defendant prosecuted the present appeal under the statute of 1885, no longer in force.

At the trial the court below excluded all evidence offered to show antecedent business transactions between plaintiff and defendant. Notwithstanding this ruling, however, counsel for defendant, in his address, repeatedly referred to these transactions, and endeavored to impress upon the jurors' minds the idea that defendant acted under such strong provocation as to justify a verdict for one cent only. In vacating the verdict returned the following language was employed by the court:

"I think that the opinion of the supreme court should be had on this method of addressing the jury; and I grant a new trial in this case freely, without any hesitation, on the sole ground that counsel, in addressing the jury, should confine themselves to the testimony, and not by innuendo or indirection seek to place before them matters which the court has expressly, by its rulings on the introduction of testimony, said were not proper."

We cannot say that the court's action in granting a new trial should be sustained upon either of the remaining grounds stated in the motion. Our examination will, therefore, extend only to the matter above specified as the basis of the ruling made. If counsel for defendant was guilty of misconduct in argument, whereby the jury may have been induced to consider circumstances not before them, and thus to reduce the damages they would otherwise have given, unless some technical objection forbids, the order under consideration should be sustained.

It is impossible to give in advance special directions for the guidance of attorneys in the discussion of evidence. An attempt to do so would unwisely limit the attorney's privilege on one hand, or embarrass the due administration of justice on the other. This is a matter that must of necessity be left largely to the reasonable discretion of trial courts, and to a certain extent be gov-

erned by the circumstances attending the particular proceedings in progress. The general rule, however, that counsel may not comment upon matters of fact that have not been admitted in evidence, and that their arguments must in this respect be confined to the record, has received universal approval. But great embarrassment is often encountered in determining just where the line exists between those inferences that counsel may draw from evidence before the jury, and the suggestion of substantive matters that are wholly outside the record. The disposition of courts has been, as it doubtless should be, to recognize a generous license in the premises, and to resolve serious doubts in favor of the freest and fullest discussion.

Counsel in the present case refrained from naming expressly any facts or circumstances not in the record, but he accomplished the same result by adroitly insinuating the existence of such facts and circumstances. He labored throughout his argument to impress upon the minds of the jurors the belief that back of the affray there existed a state of affairs which justly enraged defendant, and led him to make the assault. Without declaring that the court committed error in excluding evidence of the antecedent business relationship of the parties, he skilfully directed the attention of the jurors to this relationship, and persistently insisted that the conduct of plaintiff — whatever it may have been — was such as to excuse in large measure, if not to justify, defendant's assault. It is impossible to read this argument without being impressed with the belief that counsel may have obtained for his client even a greater advantage than the admission of the excluded testimony would have produced.

It is not contended that the court's ruling rejecting this testimony was error, and we do not perceive any legal excuse for making its absence a subject of repeated reference and comment. If it was not proper for the

jurors to have before them the prior acts of the parties, it was certainly not competent for counsel to persistently urge that the verdict should be influenced thereby. If the jury were not entitled to judge of the assault in the light of the facts constituting the alleged provocation, counsel was not entitled to constantly remind them of such provocation, and insist upon its supposed aggravated nature, in reduction of damages.

This is not analogous to the cases cited, where comment was permitted and damaging inferences were allowed to be drawn from the failure of the adverse party to produce competent evidence of importance, apparently within his reach.

The epithets employed by defendant, and mentioned by witnesses in describing the assault, furnished no legal foundation for counsel's remarks. They were uttered in the heat of passion, and, had punitive damages been allowable, would have been pertinent to augment the recovery. As it was, however, they could perform no office save possibly to aggravate the public contumely of the assault, and thus increase the measure of plaintiff's compensatory indemnity. The jurors were expressly forbidden by the charge from considering any "circumstances previous to the preparation for the assault." The utterances of defendant at the time were almost necessarily detailed as a part of the *res gestæ;* but, in so far as they might be supposed to point to a possible provocation arising out of past business transactions, they could have no effect upon the verdict. Counsel had no more right to employ the epithets in question as a basis for his innuendo of provocation than to insist, as he did, that the mere fact of the assault being made conclusively implied the existence of such provocation, and warranted the jury in considering the same upon the apportionment of damages.

The proposition is urged, however, that, since no exception was preserved during the progress of the argument, the court's action in granting a new trial was a

fatal error. The attention of both court and counsel
should undoubtedly be drawn to such objectionable con-
duct by immediate protest.   Under the impulse of excit-
ing cases, attorneys sometimes inadvertently pass beyond
the pale of legitimate argument; but, attention being at
once called to the matter, proper amends are made, and
harmful results avoided.   Occasionally opposing counsel
intentionally refrain from objection, hoping to secure
some unfair advantage, either in closing the case or in
the court of review, through the misconduct in this re-
spect of opponents.   It is obvious that when, under such
circumstances, this purpose is not accomplished, the tardy
objection by motion for a new trial should be regarded
with no special favor.   Hence it is that reviewing tribu-
nals have sometimes applied to such cases, *when the
trial court refused relief*, a rule analogous to that of es-
toppel. *Powers v. Mitchell*, 77 Me. 361; *Knight v. Hough-
talling*, 85 N. C. 17; *Davis v. State*, 33 Ga. 98.

But, as already suggested, *nisi prius* courts are neces-
sarily vested with a large discretion in passing upon
motions for a new trial.   This discretion must not be
arbitrarily or illegally exercised, but discretion, however
limited, involves some independence of judgment; and,
in determining whether or not certain alleged miscon-
duct could have prejudiced the opposite party, those
courts have advantages not possessed by reviewing tribu-
nals.   For these reasons, unless there be an illegal exer-
cise of discretion, or a clear abuse thereof, appellate
courts decline to interfere.

Moreover, trial courts themselves are not entirely free
from responsibility under circumstances like those here
presented.   Improper conduct before them, however
manifested, should be rebuked and repressed.   And no
case has been cited which holds that the mere silence of
opposing counsel estops the court from granting relief
by a new trial when the rights of litigants have been
prejudiced through misconduct in argument.

It is a fact worthy of notice that in the present case

objection *was* interposed during the argument, though no ruling was obtained, and no exception was taken. It is, therefore, not true that counsel, owing to enthusiasm or excitement, remained unconscious of the impropriety he was committing.

We cannot say that the district court abused, or illegally exercised, its discretion in the case at bar, and its action will be treated as controlling. The order appealed from is affirmed.

*Affirmed.*