ADAMS EXPRESS COMPANY v. ALDRIDGE.

1. Negligence—Pleading—Certainty.

A complaint which alleges that, while plaintiff was riding along the public highway on a bicycle, defendant's servant, who, in the course of defendant's business, was driving defendant's horse and wagon, so carelessly and negligently drove and managed the horse and wagon, that, by reason of his carelessness and negligence, the wagon struck plaintiff, inflicting the injury

complained of, is sufficiently definite as to the negligence of defendant, and a motion to require plaintiff to make it more definite was properly denied.

**2. Negligence—Highways.**

Two persons traveling along a public highway have an equal right of user, and it is the duty of each to so exercise the right to use the highway as not unnecessarily to injure the other.

**3. Negligence—Duty—Pleading.**

Where the law imposes and defines a duty, it is not necessary to specially plead it.

**4. Negligence—Highways—Evidence.**

In an action for damages for injuries to plaintiff by being struck by defendant's wagon while traveling along a public highway, evidence examined and held sufficient to require the issue of defendant's negligence to be submitted to the jury.

**5. Instructions—Verdicts—Harmless Error.**

An instruction which authorized three-fourths of the jury to return a verdict, was erroneous; but where the jury returned a unanimous verdict, the error was not prejudicial.

**6. Appellate Practice—Instructions—Exceptions.**

Where an instruction contains both a correct and an incorrect proposition of law, an exception to the instruction as a whole, which does not distinguish the portion which is good from that which is bad, is insufficient to present the instruction for review.

**7. Personal Injuries—Damages—Medical Treatment—Married Woman.**

In an action by a married woman for damages for personal injuries, expenses incurred for medical and nurse's services, if charged to plaintiff, are recoverable as part of the damage, whether they have been paid or not, notwithstanding the husband may also be liable for such bills.

**8. Practice in Civil Actions—Argument of Counsel—Exceptions —Appellate Practice.**

The appellate court will not consider an objection to the remarks of counsel in the argument of a cause where no objection was interposed at the time the objectionable remarks were made, and no instruction was asked concerning them.

**9. Negligence—Highways—Instructions.**

In an action for damages for personal injuries caused by plaintiff being struck by defendant's wagon while traveling on the highway, an instruction that if the jury believed from the testimony that, while plaintiff was riding along the highway on

a bicycle, defendant's servant, in charge of defendant's horse and wagon, going in the same direction, attempted to pass plaintiff, and, in so attempting, plaintiff was struck by said wagon and injured, their verdict should be for plaintiff, unless they further believed from the testimony that the injury to plaintiff was the result of her own carelessness, was erroneous as making defendant unqualifiedly liable for the consequence of attempting to pass plaintiff, regardless of whether or not the circumstances under, or manner in, which such attempt was made, were such as to constitute negligence on the part of the driver.

*Appeal from the District Court of Arapahoe County.*

Messrs. WOLCOTT, VAILE & WATERMAN, Mr. WM. W. FIELD and Mr. T. J. LEFTWICH, for appellant.

Messrs. YEAMAN & GOVE, for appellee.

THOMSON, P. J.

Action by appellee to recover for personal injuries received by her in consequence, as alleged, of the negligent conduct of a servant of the appellant. The plaintiff had judgment, and the defendant appealed.

The complaint alleged that, on August 14, 1899, the plaintiff was riding a bicycle along a public highway in the city of Denver, known as 15th street; that at the same time a horse and wagon belonging to the defendant was being driven along that street by a servant of the defendant in the course and scope of defendant's business; that such servant, while thus engaged in the defendant's business, so carelessly and negligently managed the horse and wagon that, by reason of his carelessness and negligence, the wagon struck the plaintiff while riding on her bicycle, throwing her violently from the bicycle upon the street, bruising and wounding her, breaking her leg, and inflicting other serious injuries upon her. Before answering, the defendant interposed a motion for an order requiring the plaintiff to state clearly and specifically in what the alleged negligence of the defend-

ant consisted, and particularly in what manner the horse and wagon were negligently driven or managed. The motion was denied, and the defendant excepted. It is contended that this ruling was erroneous, and that, while the general allegation in respect to negligence might be sufficient to withstand a demurrer, it was not sufficient to withstand the motion interposed.

Our code provides that the complaint shall contain a statement of the facts constituting the cause of action in ordinary and concise language, without unnecessary repetition.—Mills' Ann. Code, § 49.

This is the only requirement of the code respecting the manner in which the cause of action shall be set forth. The complaint should state the facts clearly and intelligibly on which the plaintiff predicates his right to recover; and when this is done, the pleading is sufficient. The facts to be pleaded, however, are ultimate, and not evidential facts. The charge in the complaint before us is that the servant of the defendant, in the course of its business, while driving its horse and wagon over a public highway on which the plaintiff was riding her bicycle, so carelessly and negligently drove and managed the horse and wagon that, by reason of his carelessness and negligence, the wagon struck the plaintiff while on her bicycle, inflicting the injuries complained of. We have here a specific statement of the facts that the plaintiff was struck and injured by the defendant's wagon; that the horse was being driven, and the plaintiff was riding on a public highway; and that the horse and wagon were in charge of a servant of the defendant engaged in its business. These allegations are sufficiently definite and certain, but, alone, they would give the plaintiff no right of action. We have, however, an allegation of the further fact that the act producing the injury was carelessly and neg-

ligently done. While, from the mere fact of the collision, no presumption would arise, the act received character from the manner in which it was done; and in virtue of that character, it was actionable. The allegation of negligence in the doing of an act is the statement of an ultimate and issuable fact; and when the act is sufficiently described, the general characterization of it as negligent is enough.—Bliss on Code Pleading, § 211a; 2 Thompson on Negligence, 1246; *Palmer v. Railway Co.,* 76 Mo. 217; *Railway Co. v. Jones,* 86 Ind. 496; *Grinde v. M. & St. P. R. R. Co.,* 42 Ia. 376; *McGonigle v. Kane,* 20 Colo. 292.

However, the sufficiency of the complaint, as against a general demurrer, is practically conceded by defendant's counsel; but they vigorously insist that they were entitled to information as to the particulars constituting the negligence. They say that the plaintiff should have been required to show by her complaint in what respect the horse and wagon were negligently driven, or negligently managed, in order that the defendant might be advised of what it had to meet. But, unless the facts which the motion demanded were within the knowledge of the plaintiff, they could not have been stated; and to require their statement would have been to require an impossibility. The driver might have been asleep; or, instead of looking before him, or observing what was in his way, his attention might have been fixed on some object in another direction; or he might have been heedless generally, and oblivious to his surroundings. Such things as these, and other possible elements of negligence on the part of the driver, if they existed, the plaintiff could not be supposed to know. Presumptively, it was not within her ability to furnish the specific facts for which the motion called; and any attempted explanation by her of the negligence, would have been based on conjecture.

But if she had undertaken to specify particular acts of negligence, she would have been confined in her proofs to those acts; so that, in case of mistake in her allegations, she would have been driven out of court, even if her cause was meritorious.—*Ry. Co. v. Younger,* 10 Tex. Civ. App. 141; *Wallace v. R. R. Co.,* 42 So. 865.

In the case of *Wilson v. R. R. Co.,* 7 Colo. 101, cited by defendant's counsel in support of their contention, there is an intimation that a plaintiff alleging negligence in general terms, may be required to make his complaint more definite and certain; but it is expressly stated that the propriety of the requirement is dependent on the possession by him of the necessary information. And, in *Orth v. R. R. Co.,* 43 Minn. 208, it was held that a motion to make the complaint, alleging negligence generally, more definite and certain, was properly denied, for the reason that it was not to be presumed that the plaintiff possessed the knowledge necessary to satisfy the motion. In *Grinde v. M. & St. P. R. R. Co., supra,* negligence was charged in language similar to that employed in the complaint before us, and the denial of a motion to require greater definiteness and certainty in the statement was approved, the court saying that it was already sufficiently specific, and that to allege more would be to plead the evidence, which was not allowable. This case was cited with approval by our supreme court, in *McGonigle v. Kane, supra.* In *Railway Co. v. Craycraft,* 5 Ind. App. 335, the charge was "that the defendant, on the 31st day of May, 1889, without any fault or negligence on plaintiff's part, carelessly, negligently and wrongfully ran its train over and upon the plaintiff's brown horse mule." A motion to make the complaint more specific, definite and certain was overruled, and the rul-

ing assigned for error. The following is from the opinion of the appellate court:

"It will be seen at once that said language is not the general allegation of negligence, but it goes farther and states the particular negligence, viz: the running of the train. This, we think, was sufficient, as the appellee could not be expected to know the exact manner the engineer or others in charge of said train operated the same. The language used in the complaint in this case is a sufficient allegation of the particular act of negligence complained of to withstand a motion to make more specific."

A distinction is undertaken between the language of the complaint in that case, and the language employed in the case before us. Counsel say:

"There is no charge in the case at bar that the defendant's driver ran over the plaintiff. The charge is 'that the defendant so carelessly and negligently drove and managed said horse and wagon that by reason of said carelessness and negligence said wagon struck the plaintiff.' In the case cited from the court of appeals of Indiana there was a distinct charge that the defendant ran its train over the animal. Furthermore, that act, to wit, the act of running the train over the animal was itself described to be and charged as negligent and wrongful. The distinction between the two cases is manifest."

What reason for greater definiteness and certainty there was in the case at bar that did not exist in that case is not explained. The legal effect of the language employed in each is the same. A corporation can act only through its agents and servants. The negligence alleged against the railroad company, was necessarily the negligence of its employees in, charge of its train, and consisted in their operation and management of the train; so that the statement that the company negligently ran its train upon the

mule, was equivalent to a statement that its servants so carelessly and negligently managed its train that the train ran upon the mule. And we do not think that the case of *Railroad Co. v. Chester,* 57 Ind. 297, to which counsel refer us, lends support to their contention. The complaint there alleged that the plaintiff, his wife and children, were passengers on a car of the defendant, holding tickets entitling them to transportation from the city of Hamilton to the city of Connorsville, and that while on the car, to be carried between those points, without negligence on their part, or on the part of any of them, the car was by and through the fault, carelessness and negligence of the defendants, their agents and employees, thrown from the railroad track over an embankment, causing injury to the plaintiff, his wife and children. The defendant had unsuccessfully moved below for an order requiring the plaintiff to make his complaint more specific, definite and certain in regard to the charge of negligence and carelessness. The court, holding that the motion should have been allowed, said:

"The general charge of the negligence and carelessness of the appellant was made and repeated, again and again, in appellee's complaint; but in no instance was this general charge predicated upon any alleged act of the appellant, either of commission or omission. What the appellant did, or omitted to do, of which it could be said that it was done, or omitted to be done, through the fault, negligence and carelessness of the appellant, the appellee has failed to allege in his complaint. Had the appellant negligently and carelessly constructed its line of railroad? Or had the appellant negligently and carelessly suffered its line of road to get and remain in bad repair and in an unsafe condition? Or, again, had the appellant's employees negligently and care-

lessly run its train of cars over its road? Or in what did the negligence and carelessness of the appellant consist, of which the appellee complained?"

We think it clearly inferable from the foregoing extract that if the complaint had alleged negligence and carelessness on the part of the defendant's employees in running its train of cars over its road, the allegation would have been held sufficient as against the motion, and such was the nature of the allegation in the complaint before us.

See, also, *Scott v. Hogan*, 72 Ia. 614.

We think the motion was properly overruled.

After the overruling of the motion, the defendant answered, denying the allegations of the complaint, except as to the ownership of the wagon, and charging the accident to the plaintiff's own negligence. When the evidence was all in, the defendant moved the court to direct a verdict for the defendant. The request was refused, and counsel contend that the refusal was error. The grounds of the motion were that there was no proof of any duty, or the violation of any duty, owing by the defendant to the plaintiff; and that there was no proof of any specific negligent act. There was evidence that on the day of the occurrence of the accident, the plaintiff was riding her bicycle westwardly on Wazee street, keeping well to the right of the street, and that the defendant's horse and wagon were proceeding rapidly on the same street behind her, and in the same direction with her; that the horse and wagon were driven by the regular driver of the defendant; that the wagon contained express matter to be delivered for the defendant at an outgoing train; that when the plaintiff reached the crossing of 15th street with Wazee street, she turned northwardly on 15th, and proceeded close to the curb on the right of the street; that the horse and wagon behind her also turned

northwardly on 15th street; that a street car was, about the same time, proceeding northwardly on 15th street, about opposite to the horse and wagon; that there was ample room for the wagon to pass between the car and the plaintiff; that when the plaintiff had gone to the distance of about forty feet from the crossing, she was overtaken by the wagon, struck on the shoulder, knocked off her bicycle and thrown to the ground by the right shaft of the wagon; and that while she was lying on the ground the right hind wheel of the wagon passed over her left leg, breaking it. Counsel's objection that no proof was made of any duty owing by the defendant to the plaintiff is fairly answered by themselves. In their brief they say:

"The plaintiff and defendant were each rightfully upon the public highway. Each had the same right of user as the other; each owed the other the same duty."

The duty devolving upon each was to so exercise the right to use the street as not unnecessarily to injure the other. The law imposes and defines the duty, and there was no necessity to plead it specially. There is some conflict between the statements of witnesses, but if there was substantial evidence in favor of plaintiff's right to recover, to find what the real facts were belonged exclusively to the jury. Negligence is an inference from facts. If the driver was proceeding directly behind the plaintiff, presumptively he saw her; and if, seeing her, he unnecessarily drove to the side of the street which she was occupying, and so ran her down, the jury, from such facts, would be amply warranted in finding negligence. The driver, however, who was a witness for the defendant, testified that he did not see her; he also stated that he had a defect in his left eye. What the nature of the defect was he did

not say; but he said his right eye was sound. She was traveling to his right, so that in so far as his ability to see the plaintiff was concerned, the condition of his left eye was not important. There may be negligence in a failure to see; and in this case it was for the jury to determine from the relative situation of the parties, if they should believe that the driver did not in fact see the plaintiff, whether in the exercise of ordinary care he should have seen her, and was therefore chargeable with negligence in not seeing her. The failure of the driver of a horse to maintain a general observation of the road so as to avoid collision with other travelers has been held to be culpable negligence.—See Shearman & Redfield on Negligence, § 645.

We are clearly of the opinion that the evidence presented questions for the jury to pass upon, and that the direction of a verdict for the defendant would have been error.

The court of its own motion specially instructed the jury as follows:

"It will be proper for nine of your panel to concur in a verdict in this case; and in case nine of you, or any number over nine and less than twelve, should concur in a verdict, it will be the duty of each of the jurors so concurring to sign the verdict. In case all of you should agree on a verdict, then it will only be necessary for your foreman to sign the verdict."

The following is the law followed by the court in the first portion of the instruction:

"That hereafter in all civil cases in courts of record which shall be tried by a jury, not less than three-fourths of the number of jurors sitting in such case may concur in and return a verdict therein; and such verdict shall have the same force and effect as though found and returned by all of the jurors sitting in such case; but whenever such verdict is

found and returned by less than the whole number of such jury, said verdict shall be signed by each juror concurring therein.''

In *City of Denver v. Hyatt*, 28 Colo. 129, that law was adjudged unconstitutional. But in this case the verdict which the jury returned was unanimous, and was signed by their foreman. It fulfilled all the requirements of the law as it existed, independently of the unconstitutional enactment, and if there had been no instruction on the subject at all it would hardly have occurred to any one to question its validity; and, certainly, it could not have been successfully assailed. A lawful verdict having been rendered, we confess to an inability to understand how it may be invalidated by an instruction which authorized an erroneous verdict, but which the jury ignored. The instruction was not followed, but the law was; and surely the result of the jury's deliberations should not be set aside simply because, in reaching it, they acted lawfully, even though they disregarded an erroneous direction. Counsel seem to think that the instruction had the effect, in some way, of coercing the jury. They say there might have been three of the jurors who were opposed to a verdict in any amount against the defendant, but who, realizing the uselessness of opposition, might, for the sake of reducing the amount found by the other nine, have agreed with them in a compromise verdict. Why should the nine abandon their ground when they were instructed that their finding would be just as good without the concurrence of the three as with it? And how could an instruction that the verdict need not be unanimous, have a coercive effect to make it unanimous? While the instruction was erroneous, it evidently had no effect on the conduct of the jury, and was therefore harmless. But, aside from all this, the question which the defendant asks us to deter-

mine, is not properly before us. The instruction was partly good and partly bad. In authorizing three-fourths of the jury to sign and return a verdict, it was erroneous; but in directing a verdict, if unanimous, to be signed by the foreman, it was correct. It was met by one general exception, which was to the instruction as a whole. The exception did not distinguish the portion which was good from that which was bad, and was therefore wholly insufficient. —*Beals v. Cone*, 27 Colo. 473.

Evidence was admitted over the defendant's objection of the expenses incurred for medical and nurse's services in consequence of the injury, and the court instructed the jury that they might take such expenses into consideration in estimating the plaintiff's damages. The defendant contends that the admission of the evidence and the giving of the instruction were erroneous. It appears that the charges for the services were against her, and that they were reasonable. Counsel say that her husband was liable for these bills, that they could have been collected from him, and that, therefore, they constituted no part of the damage she sustained. Under our laws a married woman may contract debts and incur liability in the same manner and with the same effect as if she were sole. Whether her husband might have been liable for these bills or not, the evidence warrants us in saying that she was; and, being liable, her liability was a legitimate constituent of the damage she sustained. Whether she had actually paid them is immaterial; they were nevertheless recoverable by her against the defendant.—*D. & R. G. Co. v. Lorentzen*, 24 C. C. A. 592.

One of the grounds of the motion for a new trial was alleged improper remarks in argument on the part of one of the counsel for the plaintiff in his closing address to the jury. In the brief of counsel

for the defendant the remarks are characterized as "inflammatory." The following is the language against which counsel protest, as contained in an affidavit filed in support of the motion:

"Some of you, many of you, are married men and have families; how much would you take to have your wife run down in the public street, her leg broken and her body covered with cruel bruises? How much would you take to have your wife run down in the public street and subjected to the curious gaze of the gaping crowd? How much would you take to have your wife knocked from her bicycle, rolled in the dirt in the public street, and humiliated and made the spectacle of a crowd on the public street?"

Wide latitude is allowed an attorney in advocating his client's cause, and we are not prepared to say that by the language quoted, the bounds of propriety were overstepped. The court had instructed the jury that in arriving at their verdict they might take into consideration the character and extent of the plaintiff's injuries, and the pain she suffered. Damages for personal torts are not measurable by fixed rules. The amount which may be recovered is left largely to the discretion of the jury. It is evident that when counsel used the language complained of, the subject of his comment was the injury received by the plaintiff. There is nothing in this language denunciatory of the defendant, and we do not see that it was necessarily calculated to excite in the minds of the jury a feeling of hostility toward the defendant. Counsel was simply picturing the situation in such manner as to induce action by the jury favorable to his client in their estimate of the damages. But whatever might be said regarding the propriety of the remarks attributed to counsel, there was no objection interposed to them at the time they

were made, nor was any instruction requested concerning them; and, therefore, even if they might be the subject of censure, the defendant would not be entitled to a consideration here of the question respecting them which is now raised.—*Schmidt v. Bank,* 10 Colo. App. 261; *Dry Goods Co. v. Martine,* 12 Colo. App. 299; *Cook v. Doud,* 14 Colo. 483; *Klink v. People,* 16 Colo. 467.

With a single exception, to be now considered, the instructions which were given fully and fairly submitted to the jury all the questions of fact involved in the case. The law on the subject of negligence was clearly and correctly presented. But the court further instructed the jury as follows:

"If the jury believe from the testimony in this case, that while plaintiff was riding a bicycle on Fifteenth street in the city of Denver, the servant or driver of the defendant, in charge of defendant's horse and wagon, going in the same direction as the plaintiff, attempted to pass the plaintiff; that in attempting to so pass, the plaintiff was struck by said wagon and thereby injured as alleged in the complaint, then the verdict of the jury must be for the plaintiff, unless, from the testimony in this case, they further believe that the accident to the plaintiff was the result of her own recklessness, carelessness or want of ordinary care."

An objection to the foregoing instruction is that there was no evidence that the driver was attempting to pass the plaintiff, or had any intention of doing so. A party's intentions are positively known only to himself. Others must infer them from his acts. The only method of disproving his statements as to what his intentions were, is by what he actually did; and what he did may be so significant as to overcome his statements, even if given in the form of testimony. The driver denied that he was attempting to

pass the plaintiff; but he did exactly what he would have done if it had been his deliberate purpose to pass her. He was an interested witness, and was endeavoring to exculpate himself. From his conduct, and all the circumstances surrounding the transaction, the jury might, notwithstanding his denial, believe that the collision occurred in an attempt by him to pass the plaintiff; and a finding that such was the fact would not be disturbed for want of evidence to support it.

But the instruction presents a much more serious difficulty. It made the defendant unqualifiedly responsible for the consequences of the attempt, if such attempt was made. According to it, liability for the injury followed the act, regardless of the circumstances under, or the manner in, which it was done. If the jury believed that there was such attempt, they had, under the instruction, but one thing to do, and that was to return a verdict for the plaintiff. They were not called upon to inquire further. It is true that undisputed facts may be such that the law affixes the stamp of negligence to an act, and it then becomes the duty of the court to so declare. Or, the state of the evidence being such that the controversy must be submitted to the jury, a finding may be warranted of special facts which in themselves, as a matter of law, would constitute negligence, and it then devolves upon the court to so instruct the jury. The question arising upon this instruction, therefore, is whether the attempt to pass the plaintiff, if it was made, was, without more, conclusive upon the defendant of the negligence of its driver.

It has been laid down in general terms that when teams are passing along a public highway in the same direction, the rear team may pass the other if there is ample room; but if in attempting to pass,

damage occurs without fault on the part of the advance team, the party causing the damage is liable for the consequences.—*Knowles v. Crampton,* 55 Conn. 336.   See, also, *Avegno v. Hart,* 25 La. An. 235.

An abstract legal statement occurring in a judicial decision must be interpreted by the connection in which it is found and the facts to which it is applied.   Ordinarily, it would be a mistake to give it the effect of a hard-and-fast rule to which all other considerations must yield.   In *Knowles v. Crampton,* the proposition was before the court as an integral part of the charge below to the jury, and the meaning it was intended to convey was determinable from the charge as a whole.   The court dismissed the objection to it, which was that it dispensed with all necessity of proof of negligence, not because, as an independent proposition, it stated the law, but because it was part of a general charge in which, to use the court's own language, "the jury were fully charged on the subject of negligence, and were distinctly told that negligence was essential to the defendant's liability."   In *Avegno v. Hart* the defendant, driving recklessly, undertook to pass the plaintiff on the wrong side.   The plaintiff, having the right to expect him to pass on the other side, pulled to the side taken by him, supposing that he was thus getting out of the defendant's way.   The court said that the defendant was not in his proper place.   It is by those facts that the statement in the opinion that when a driver attempts to pass another on a public road he does so at his peril, must be understood.   The law of the road, as applicable to travelers proceeding in the same direction, is thus stated by Mr. Angell:

"A traveler may use the middle or either side of the road at his pleasure, and without being bound to turn aside for another traveling in the same direc-

tion, provided there be sufficient room to pass on the one hand or on the other. If there be not sufficient room, it is the duty of the foremost traveler to afford it, on request made, by yielding an equal share of the road, if that be adequate and practicable; if not, the object must be deferred till the parties arrive at ground more favorable to its accomplishment."—Angell on Highways, § 340. See, also, *Bolton v. Colder*, 1 Watts 360.

The foregoing language would be meaningless if the amplest room for passing by the hindmost traveler, and the utmost care exercised by him in effecting it, would still fail to exonerate him from liability for some accident resulting in injury to the person in advance. In *Burnham v. Butler*, 31 N. Y. 480, the liability of the defendants, as determined by the justice before whom the cause was first tried, was affirmed, not on the ground that an attempt of one to pass another on a public highway, of itself, renders him liable for the consequences, but on the ground that the defendants, in undertaking the passage, failed to use the precaution and care demanded of them under the circumstances. The opinion quotes the rule laid down by Mr. Angell, and distinctly recognizes the right, where conditions are favorable, of one traveler to pass another without risk of liability, if he exercise the proper caution in doing so.

We find some evidence in this record that when the driver had reached a point about on a line with the plaintiff, the hind wheels of his wagon slued or swung toward her; that she was caught by the right hind wheel; and that all the injury she received was thus occasioned. The sole ground of the defendant's liability is the negligence of its driver. If there was sufficient room to pass the plaintiff with safety, it was not negligence to make the attempt. If the passage was conducted with such circumspection and

care as existing conditions and circumstances required; and if the collision was the result of an accident which ordinary prudence could not have foreseen or prevented, the law affords the plaintiff no remedy.

The instruction complained of was complete within itself. It was not an abstract statement incorporated with a general charge in such manner that its meaning was controlled by the charge as a whole. The other instructions completely covered the question of negligence. But here was an additional one, independent of the others, by which it was undertaken to hold the defendant liable on a different ground. A belief formed by the jury that the collision was the result of an attempt by the driver to pass the plaintiff, was under that instruction an end of the case. By its language it was wholly immaterial how careful the driver may have been; and it is impossible for us to say that in reaching their conclusion, the jury looked farther than that instruction.

Of course, if the plaintiff was knocked from her bicycle by the shaft of the wagon, the fact, if it was a fact, that the hind wheels slued, is of no manner of importance. That the sluing of the wheels may be of any avail to the defendant, it must not have been caused by carelessness in the manner in which the wagon was driven, and it must have been the sole cause of the injury. But all the facts were for the jury's consideration. Their attention should not have been diverted from any of them. The other instructions were amply sufficient to guide the jury in their investigation of all the questions properly raised by the evidence; but this one authorized a verdict without any consideration of those questions.

The judgment must be reversed.

*Reversed.*