No. 9025.

ROCKY MOUNTAIN FUEL COMPANY, ET AL. *v.* BAKARICH.

1. RELEASE—*By Illiterate Person, Induced by Fraud.* An illiterate miner injured by the negligence of his employer is induced by the surgeon having charge of his injury, who is also in the service of his employer, to execute a release to the employer of all liability; the miner is not able to read the paper, and misunderstands its effect. He is moved to execute the release by his confidence in the surgeon. He is not bound thereby.

2. INSTRUCTIONS—*Contradictory, Confusing and Misleading.* Upon each proposition of law counsel should present a single instruction. The presentation, at the termination of a long trial, finally involving a few simple questions, of voluminous, instructions, stating and re-stating the same proposition in different terms, censured.

3. TRIAL—*Fair Trial—Misconduct of Counsel.* Counsel for the successful plaintiff, indulging in remarks highly injurious, and liable to excite prejudice against defendants in the minds of the jury, the court was requested to reprimand counsel for this impropriety, and instruct the jury that what was so complained of should be disregarded. The court merely replied by referring to instructions already given to the effect that the argument of counsel was not evidence. The omission of the court declared a failure of duty, highly prejudicial to the defendant.

MANY cases cited, as to the duty of the court to control counsel in such case.

*Error to Denver District Court, Hon. George W. Allen, Judge.*

*En banc.*

Mr. J. V. Sickman and Mr. Harry S. Silverstein, for plaintiffs in error.

Messrs. Melville & Melville, for defendant in error.

Mr. Justice Burke delivered the opinion of the court.

THE defendant in error brought this action against plaintiffs in error for injuries sustained by him in an a accident in the Vulcan mine which resulted in the loss of three of the fingers of his right hand. He claimed damages in the sum of ten thousand dollars. The verdict of the jury was in his favor for forty-six hundred dollars, and from judgment entered thereon this writ of error is prosecuted. The parties are hereinafter designated as in the court below.

Seventy-three alleged errors are called to our attention. The first nine and number sixty-eight relate to the amendment of pleadings and rulings thereon; the fifteenth to the refusal of the court to first try the cause upon the issue as to the written release hereinafter mentioned; the twenty-seventh, twenty-eighth and twenty-ninth as to the court's ruling on the submission of special interrogatories, and the nineteenth to the admission of evidence. All these are, we think, without merit. The remainder, so far as necessary to be considered, are included in the subjects hereinafter discussed.

As a result of the accident in question plaintiff claims he sustained numerous and serious injuries in addition to the injury to his hand. He was foreign born, and there is evidence that at the time of the accident his knowledge of the English language was defective. His principal occupation was that of coal miner. Immediately after the accident he was taken by Dr. Hepner, in the employ of defendants, from the mine to Glenwood Springs. Here he was placed in a hospital under the care of Dr. Crook, another of

defendant's employes, who amputated the three injured fingers of his right hand, August 7, 1914. On August 30, following, and while he was still in the hospital, he signed exhibit 1-A, which was introduced in evidence without objection, and which is in words and figures as follows, to-wit:

"Exhibit 1-A.

"Settlement in Full for Claim for Personal Injury.

"In consideration of the sum of two hundred and fifty dollars ($250.00) to be in hand paid by The Garfield Mine Leasing Co., a Wyoming corporation, the receipt whereof I hereby confess, I do hereby acknowledge full payment and satisfaction of, and I do hereby forever release and discharge said THE ROCKY MOUNTAIN FUEL COMPANY from any and all claims, demands and causes of action whatsoever which now exist, or which may hereafter arise for or on account of any and all personal injuries, of whatsoever character or description, sustained by me in an accident which happened on or about the 7th day of August, A. D., 1914, at the so-called Vulcan coal mine, situated at or near New Castle, Colorado; resulting in the loss of three fingers of my right hand; meaning and intending hereby to, and I do hereby release and discharge said Company from any and all claims and demands whatsoever as fully as if my said injuries, whether the extent thereof be now known or hereafter ascertained, were all described herein in detail.

In making this settlement no promise of future employment is, or has been, made to me.

I have read and fully understand the foregoing instrument, and agree to same, and hereto affix my signature at Glenwood Springs, Colorado, this 30th day of August, A. D. 1914, as my free and voluntary act and deed.

Witnesses:

    J. W. Cummins,

    W. W. Crook.

                  Joe Bakarich        (Seal)"

                        Person Injured.

Dr. Crook was called as a witness and testified that plaintiff asked him to take up his claim with Cummins, manager of the Leasing Company. To this Crook consented. He says plaintiff looked upon him as his friend, and told him he thought he ought to have one thousand dollars. Witness replied that this was "out of all reason for the injuries he had." Crook continued to busy himself about this matter, and through him the release was procured. Plaintiff says that he could not read English, and did not read the release, but that he understood it to be a settlement for lost time only. Dr. Crook seems to have overlooked entirely any other injuries sustained by plaintiff than the injury to his hand (if such there were), and put himself in the position of representing the plaintiff, while actually in the employ of defendants. If he was guilty of bad faith in this transaction and by reason of his professional position, and his attitude toward plaintiff, induced him to place confidence in him, and if plaintiff did so and could not read the release, but depended upon the witness Crook, defendants can not take advantage of that transaction, and plaintiff is not bound by it. We think there was evidence enough to go to the jury on this question.

The effect of this release, if valid, seems to have been entirely misconceived by the trial court.

By instruction No. 6 the jury is permitted, should it take a certain view of the evidence, to disregard the release entirely save as a receipt for two hundred and fifty dollars.

By instruction No. 7 they are authorized to consider it as a release for the injuries resulting from the loss of three fingers.

By instruction No. 22 the jury is told that plaintiff can be given no damages on account of the loss of three fingers.

The mention of the loss of three fingers in exhibit 1-A is clearly only a method of designating the particular accident mentioned in the release. If the release is valid it is a full and complete release for all injuries sustained by plaintiff in the accident. Otherwise it is only a release for claim

for loss of time, and it is such, not by any specific provision contained therein, but because plaintiff says he signed it with the understanding that it was such a release.

This is not the only fault to be found with these instructions. There are twenty-four of them altogether. The first, which is almost equal in length to the remaining twenty-three, purports to be a statement of the case. It follows generally the course of the pleadings, with the result that it partakes of the nature of an argument. By far the larger portion of it is devoted to a statement of the claims of the plaintiff. It was objected to on this ground and many others. It could have been no aid to the jury in understanding the issues and was doubtless confusing.

Instructions Nos. 8 and 15 are duplicates. By instruction No. 22 the jury was forbidden to allow plaintiff anything for loss of time or loss of the three fingers. This was on the theory that plaintiff had admitted settlement for loss of time, and that the release showed full settlement for loss of the three fingers. The jury, by its answer to special interrogatory jo. 1, expressly found to the contrary. We think on the whole these instructions were so involved, confusing and contradictory as to have misled the jury.

Defendants were not themselves free from fault in this matter. They submitted for consideration of the trial court thirty-eight requested instructions, a number wholly beyond reason under the circumstances. When a case which has occupied considerable time in its trial and taken a wide range as to both law and facts finally simmers down to a few simple questions, and the trial judge is deluged with a perfect torrent of requested instructions, often long and inartificially drawn, adroitly commingling what is true and what is false, stating and re-stating the same proposition in different terms, approaching each subject from every conceivable angle, and at the peril of committing reversible error, burdened with the duty of finding "two grains of wheat in two bushels of chaff," such a result as here con-

fronts us is not surprising.  Counsel are entitled to request the giving of such instructions as they deem proper.  These should only be such as are justified by the pleadings and the evidence.  Each proposition of law contended for should be covered by a single requested instruction.  The right of counsel to make such requests and have them given careful consideration may be so abused as to be lost.  This could be done by handing to the trial judge a copy of Sackett's Instructions to Juries and requesting the giving of all the instructions therein contained applicable to the facts in the case.  But this is not the only method of tendering instructions which would constitute such an abuse.

Were this the only error of the trial court we should hesitate to relieve therefrom parties so clearly *in pari delicto* as the defendants in this case; but this record discloses another which we consider still more serious.

Sufficiently set forth in the record, abstracted and duly excepted to, is an argument made by counsel for plaintiff below to the jury.  We quote from the bill of exceptions (which may or may not be a part of this record, and which question for this purpose is immaterial; the bill of exceptions is O. K.'d by attorneys for plaintiff and the substance of the argument admitted in their briefs and in their oral argument before this court) :

"And thereupon and during the argument of the case before the jury by counsel for the plaintiff, the attorney for the defendants rose, and objected to the Court, * * *, and particularly objected to his arguing and criticising the conduct of the defendants in paying the sum of $250.00 to the plaintiff and procuring a release and to counsel for plaintiff stating to the jury that it was such methods as this, that of thus obtaining releases, among other things, which was a reason for the dissatisfaction between the coal mine workers and the coal mine operators, and that it was just such conditions as these that brought about the recent strike in Colorado which incited the sending out of the militia, and the calling in of the Federal troops."

Counsel for defendants requested that counsel for plaintiff be reprimanded for this argument and that the jury be specifically instructed that it was improper and should not be regarded. The court did neither, but merely stated that by his instructions already given the jury was advised that the argument of counsel was *not evidence*. This was equivalent to a statement by the court that the argument, as such, was proper.

"All courts agree that it is the duty of the presiding judge, either of his own motion or upon the request of the opposing party or his counsel, to interpose and check the party or his counsel in an improper and prejudicial line of argument. * * * This duty is a very plain one, and good care should be taken to discharge it fully and faithfully."

Thompson on Trials, Section 958.

Where an attorney argued to the jury that a plaintiff was not the real party in interest, and that counsel appearing for him was in fact employed by an outsider and the action was in fact being prosecuted for the purpose of injuring an intervenor, (there being no evidence before the jury for such alleged facts) such argument was held reversible error.

*Hall v. Wolf*, 61 Ia. 559, 16 N. W. 710.

Where the question under consideration was the ability of a telegraph company to get a message over its lines promptly, and the attorney for plaintiff, in argument to the jury, stated that he was a telegraph operator and had himself worked on the line in question and knew that prompt transmission was possible, such argument was held reversible error, although the court said to the jury at the close of it:

"You will not consider any statements made by Mr. Logan in his argument concerning his personal knowledge as an operator, for the reason that he was not a witness in the cause."

The appellate court holding that:

"It was the more serious and prejudicial to the opposite

side because of the well known standing of the lawyer that uttered the objectionable matter. * * * He exceeded the most liberal limit allowed to advocacy, * * * In so aggravated a case as this we hold thaat this mild statement from the court was not adequate or timely. * * * 'Such statements should be checked and a severe reprimand administered in the presence of the jury, to the attorney who is guilty of this violation of duty.' "

*Smith v. W. U. T. Co.*, 55 Mo. App. 626.

Where counsel in argument "refrained from naming expressly any facts or circumstances not in the record, but he accomplished the same result by adroitly insinuating the existence of such facts and circumstances" this court held reversible error was committed.

*Cook v. Doud*, 14 Colo., 483, 23 Pac. 906.

Improper statements concerning the wealth of defendants, made in argument to the jury and unsupported by evidence, were held reversible error, although the court told the jury that they were improper and should be disregarded.

*Grant v. Varney*, 21 Colo. 329, 40 Pac. 771.

In a prosecution for receiving stolen property the special prosecutor explained to the jury "That he had further expected to prove, as stated in his opening, that the defendant had murdered Mollie Gorman;" also that "The defendant forgot to explain to the jury that the reason she gave Caserleigh the sum of $25 was that she expected the enraged miners to blow up her house on account of the murder of Bulkley," such argument was held reversible error.

*Smith v. People*, 8 Colo. 457, 8 Pac. 920.

In an action for damages arising from a mine accident resulting in death, counsel argued "It is a matter of common knowledge that employers and mining companies in this district protect themselves against liability on account of accidents by taking out insurance in insurance companies against such liability." The court instructed the jury to disregard this argument, and in this court it was contended

"That no prejudice resulted to defendants because the court immediately cautioned the jury to disregard it." But this court said: "We are unable to agree with this specious kind of argument * * *. We are satisfied that the unfavorable impression on the minds of the jury was not removed by the direction of the court to disregard the statement."

*Coe v. VanWhy*, 33 Colo. 315, 80 Pac. 894, 3 Ann. Cas. 552.

The error committed by the attorney for plaintiff in this case was perhaps greater and the effect probably more damaging than that noted in any authority hereinbefore cited. He first assumed the proof of every questionable act in relation to the release which could be inferred from pleadings or evidence, and then classed this as but one of a series of such reprehensible transactions on the part of these defendants and other coal companies which, according to his argument to this jury, had brought about a condition of affairs in this state of which every citizen was cognizant and of which this court must take judicial knowledge. This accident occurred on August 7, 1914. An extensive strike was then in progress in the coal mines of the state. It had been marked by armed conflicts and much bloodshed. The governor had called out the militia, and later Federal troops were sent here by order of the President of the United States. They were not withdrawn until early in 1915. This cause was tried April 11, 1916, little more than a year after the close of that deplorable chapter in the state's history. Commissions had been appointed and investigations conducted in an effort to fix the responsibility for this reign of lawlessness, and in the minds of many of the citizens of the state it had not been satisfactorily fixed. But counsel for plaintiff in his argument assumes to have found two of the culprits, and as such held them up to these jurors for the condemnation. What the real effect of it was we cannot determine, but that it was calculated to inflame the passions and prejudices of the jurors can-

not be doubted. It is contended here, as it was contended in *Coe v. VanWhy, supra,* "that no prejudice resulted to defendants," but we must say with the court in that case, "We are unable to agree with this specious kind of argument," and with the court in *Smith v. W. U. T. Co., supra,* "It was the more serious and prejudicial to the opposite side because of the well known standing of the lawyer that uttered the objectionable matter."

For the reasons herein given the judgment is reversed and the cause remanded for further proceedings in conformity with the views herein expressed.

Allen, J., not participating.