Presiding Judge Scott
delivered the opinion of the court.
On the 18th day of May, 1907, John W. Madigan, appellee, hired of the appellant, the Denver Omnibus and Cab Company, then engaged in the livery business in. the City of Denver, a horse and buggy for the purpose of driving.
Madigan was a large man and the appellant’s foreman testifies as to the matter of the engagement of the vehicle as follows: “He came to the
stable and said he wanted to get a good horse and buggy; that he and his wife wanted to take a ride; that they would be gone from about ten to three o’clock. He asked me to get him something good and nice.”
After Madigan, accompanied by his wife, had been driving for some time and while on Broadway in the City of Denver at the crossing of Fourth Avenue, the front axle broke at a point from ten to twelve inches from the right front hub, the right front wheel falling outward, throwing Madigan out of the buggy, his right hip striking upon the broken point of the axle attached to the wheel, and causing the injury complained of, which was a severe wound from one and a half to two inches in width, to about' the same in depth.
*133 The cause was tried to a jury and a verdict and judgment in favor of the plaintiff below rendered, in the sum of $900.00, from which judgment the defendant now appeals.
The errors complained of and necessary to be considered are (a) the action of the trial court in overruling the defendant’s demurrer to the plaintiff’s evidence; (b)" in denying the motion of the defendant for'an instructed verdict; (c) in overruling defendant’s motion in arrest of judgment; (d) the refusal of the court to give one instruction asked by the defendant.
The evidence upon the part of the plaintiff shows that upon examination made immediately after the accident, there appeared to have been an old break in the axle, extending upward from the bottom and entirely through the axle to at least half its thickness and that the ends of the broken parts were covered with rust to the extent of such break, while the remainder of the broken ends showed a bright new break, and further, that the rust where disclosed appeared to be thick at the outer edge of the broken parts of the axle.
The evidence in this respect,- while conflicting with other evidence offered by the defendant on this point, seems sufficient for the jury upon which to base such a conclusion as to the fact.
There is no evidence as to the actual knowledge of the defendant or its managing officers, as to the defect or break in the axle at the time that the buggy was hired to the plaintiff, therefore, if the company is chargeable with negligence, such negligence must be imputed to it by reason of the fact that the fault or defect could have been known by *134 the exercise of such care and diligence upon its part as the law requires. The buggy does not appear to have been inspected or examined in such manner as would disclose the existence of a defect of the character complained of.
The assistant foreman testified that before the buggy was delivered to the plaintiff, he shook the wheels and shafts for the purpose of ascertaining whether or not it rattled, or if there were loose nuts or bolts; that he knew the buggy was one of the best they had, and gave it to him; that Madigan said he wanted a strong buggy. Another employee said that he oiled the buggy on the morning before it was taken out. - This seems to be the only evidence as to any inspection or investigation as to the condition of the buggy either at that time or before. The buggy had been in use about a year.
The accident occurred upon what appears to have been a comparatively level driveway. The plaintiff had been driving in a walk and had just started the horse into a trot when the accident occurred, and there does not seem to have been any reasonable cause for the accident except an existing break in the axle of the buggy.
The evidence does not disclose any fault upon the part of the plaintiff. Indeed, contributory negligence is not alleged in the pleadings and is not suggested in the argument, hence is eliminated from our consideration in this case.
Under this state of facts was there such a prima facie showing of actionable negligence in plaintiff’s testimony as to justify the trial court in submitting the case to the jury.
*135 It is well settled, that carriers of passengers are not insurers of the safety of their passengers, and are liable only in case of negligence. It may be likewise accepted as the law that such carriers are not liable where an accident arises from a hidden or internal defect, not discoverable by the degree of care imposed by the law.
There would seem to be no apparent distinction as to duty upon the part of a livery stable keeper letting his vehicle for hire and that of a stage coach owner in the carrying of passengers, in so far as that duty relates to the safety of the vehicle.
The principles governing the liability of passenger carriers seems first to have been laid down in stage coach cases, and while it was early settled that an owner of a stage coach is not an insurer of the safety of its passengers, yet he is liable in case of negligence. It has likewise been generally held that the carrier by stage coach is bound to exercise the greatest care and diligence consistent with the conduct of such business, and is liable for the slightest negligence of himself and his servants.
The case of Hadley v. Cross, 5 Vt. 586, is one similar to the case at bar. It appears in that case that the plaintiff Cyrus Hadley hired of the defendant who was a livery stable keeper, a horse, wagon, and harness to go on a journey with his wife, and that while on such journey, in consequence of the breaking of the spring to the snap on the thill of the wagon to which the hold-back part of the harness was attached, the horse was frightened and capsized the wagon, throwing out the plaintiff, Maria E. Hadley, and seriously injuring her.' The *136 .testimony on the part of the plaintiffs tended to prove that the broken spring had the appearance, from rust and other indications, of having been nearly broken off for. a long time, and before the bi-ring of the wagon from the defendant by the plaintiffs.
In that case it was said:
“It is conceded on both sides that the same rule of duty and diligence should be applied to the letter of horses and carriages for hire, for others to drive, as to coach owners or other passenger carriers, who furnish drivers as well as teams.”
In speaking of the rule of duty and diligence the court further said:
“Some of the books and cases say the carrier of passengers is only liable for a want of due care, or reasonable care; others say they are bound to extraordinary care, and the highest diligence to insure the safety and security of their passengers. But we apprehend there is no real difference in the meaning of these terms as applied to the subject. In any business involving the personal safety and lives of others, what is due care, reasonable diligence? Clearly nothing less than the most watchful care and the most active diligence; anything short of this is negligence and carelessness, and would furnish clear ground of liability if the injury was thereby sustained. ’ ’
In the case of Ingalls v. Bills, 9 Metc. Mass. 1, and reported in 43 American Decisions 346, the court entered upon a most exhaustive review, criticism, and construction of the leading English and *137 American eases upon this subject, and it was there held that:
“The proprietor is answerable for any injury happening from any defect in the coach which might have been discovered by the most careful and thorough examination, but not for an injury happening by reason of a hidden defect which could not upon examination have- been discovered. ’ ’
The court in that case states the duty of a proprietor of a vehicle used for hire in the following language:
“A coach proprietor is bound to use the greatest care and diligence in providing suitable and sufficient coaches, and in keeping them in suitáble condition for use.” And again, “The result to which we have arrived from the examination .of the case before us is this: That carriers of passengers for hire are bound to use the utmost care and diligence in the providing of safe, sufficient, 'and suitable coaches, harnesses, horses and coachmen, in order to prevent those injuries which human care and foresight can guard against; and that if an accident happened from a defect in the coach which might have been discovered. and remedied upon a most careful examination of the coach, such accident must be ascribed to negligence, for which the owner is liable in case of injury to a passenger, happening by reason of such accident. On the other hand where an accident arises from a hidden or internal defect which a .careful - and thorough examination would not disclose, and which could not be guarded against by the exercise of a sound judgment and the most vigilant oversight, then the proprietor is *138 not liable for the injury, but the misfortune must be borne by the sufferer as on'e of that class of injuries for which the law can afford no redress in the form of a pecuniary recompense.”
It is contended by the plaintiff in error, that there was no evidence by the plaintiff as to negligence in inspection or incompetency of inspectors. This is a matter peculiarly within the knowledge of the proprietor. — Adams Express Co. v. Aldrich, 20 Colo. App. 78.
. In the case of Stokes v. Saltonstall, 13 Pet. U. S. 114, the following instruction bearing upon this point was approved by the court:
“It being admitted that the carriage was upset and the plaintiff’s wife injured, it is incumbent on the defendant to prove that the driver was a person of competent skill, of good habits, and in every respect qualified, and suitably prepared for the business in which he was engaged; and that he acted on this occasion with reasonable skill, and with the utmost prudence and caution; and if the disaster in question was occasioned by the least negligence, or want of skill or prudence on his part, then the def endant is liable in this action. ’ ’
It is urged by the appellant that the plaintiff below did not make a prima facie case.
In Stokes v. Saltonstall, 118, supra, it is said:
“But although there is no case which could have the weight of authority in this court, we are not without a decision in relation to it.. The very point was decided in 2 Camp. 80; where it is said by Mansfield, Chief Justice, that he thought. the plaintiff had made a prima facie case by proving *139 his going on the coach, the accident, and the damage he had suffered.”
The condition of the break or defect in this case as indicated by the testimony as to the rust thereon immediately thereafter, is evidence tending to show an old break.
Myers v. Erie R. R. Co., 60 N. Y. Supp. 422; Momence Stone Co. v. Groves, 197 Ill. 88; Jones v. R. R. Co., 92 N. Y. 628.
From this it will appear that the trial judge very properly submitted the case to the jury.
It was clearly within the .province of the jury to say from a consideration of all the evidence, (a) whether or not the accident occurred by reason of a break or fault existing at the time the vehicle was hired to the plaintiff; (b) whether such break or defect was known to the defendant or its employees, at the time, or could have been known by the exercise of that care and diligence required by the law, and (c) whether or not the pre-existing defect if such defect existed, was the proximate cause of the accident and injury.
The instruction tendered by the appellant and refused hy the court is as follows:
“The court instructs the jury that the jury must not assume that because an accident happened, that the defendant company, its officers, managers or employees, or some other person was guilty of negligence.”
We do not think this is error. The instructions which the court did give covered the substance of this instruction and repeatedly affirm the neces *140 sity of a finding of negligence upon the part of the defendant, before recovery may be allowed.

Judgment is affirmed.

All the judges concurring.
Walling, J., not sitting.