## West Chicago St. R. R. Co. v. Jessie Tuerk.

90    105
a193s 385
90    105
a193s 385

1. Negligence— Of a Third Party. —The negligence of a third party will not relieve a defendant guilty of negligence where his negligence is the efficient and proximate cause of the injury.

2. Verdict—Not to be Impeached for Matters Occurring after the Return.—Matters occurring after the return of a verdict can not be permitted to vitiate it and render a new trial necessary.

3. Damages— When $7,500 is Not Excessive.—A woman of previous good health was injured in a street car accident. The evidence showed a

marked deformity, the left foot being turned in toward the opposite one, the heel raised from the floor about two inches, the knee bent and the thigh flexed or bent, and the hip bone above the hip drawn up about two inches. The spine was curved to the right-side, the left shoulder lower than the right one, the right shoulder blade standing out more prominent than the left one, the evidence of the physicians showing her to be permanently crippled. *It was held* sufficient to warrant the jury in assessing the damages at the sum of $7,500.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed July 5, 1900.

Statement.—This suit was brought to recover damages for personal injuries sustained by appellee while a passenger upon one of appellant's cars. The declaration consists of one count, and alleges that appellee became a passenger upon one of appellant's cars, and that appellant so carelessly and negligently ran and operated the car that it came into collision with a certain buggy while appellee, with all due care and diligence, was riding as a passenger on said car, whereby the appellee was injured. Defendant pleaded the general issue.

Upon the trial there was evidence presented from which the jury might find the following facts: That the car upon which appellee was riding when injured, was, just prior to the injury, proceeding along Milwaukee avenue in the city of Chicago, and that a horse and buggy, driven by one Sweeney, was traveling in the same direction along Milwaukee avenue, sometimes ahead of the car, sometimes alongside of it, and sometimes in the rear of it; that when some one hundred feet distant from the place of the injury, Sweeney was prevented from following the roadway at the side of the car tracks by reason of piles of rubbish which occupied the roadway, and he was thereby obliged to turn partly, at least, into the car tracks; that after proceeding along in the car tracks ahead of the car to a point where the pile of rubbish ended, Sweeney attempted to turn out of the car tracks and into the roadway; that while thus turning, the car in question ran upon the left rear wheel of

the buggy, and as a result of the collision the wheel of the buggy was thrown upon the car and against appellee, who was seated upon one of the longitudinal seats of the open car, and appellee's leg was caught and pinioned between the buggy wheel and one of the upright posts at the side of the car; that the car was proceeding at the full rate of speed at the time of the collision, and that no bell was rung or other warning given of the close approach of the car to the buggy.

There was also evidence presented by appellant tending to show that the collision was caused by the buggy suddenly and unexpectedly turning into the car tracks from the roadway and only about six feet ahead of the moving car.

The injuries to the appellee are described by herself as follows:

"When I came to my senses   *   *   *   I felt pain in my side, hip and left leg.   *   *   *   There was a bruise on my left hip and one on my side, between the breast and the waist.   There were two places where the skin was broken below the left knee.   My arm and shoulder swelled and got stiff and I couldn't move it, and also the left arm, hand and neck.   The doctor treated me until October, but I kept getting worse all the time.   As the limb would heal up I would get worse at the hip, where I felt severe pains all the time," etc.

The injury occurred in July, 1897.   In March, 1899, at the time of the trial, the appellee described her condition as follows:

"I couldn't step on my heel and can not now.   I have tried since then to step on the heel, but severe pains run all the way up to the back of my head.   *   *   *   The left arm is sore; kind of lame.   I haven't much use of it, and can not raise it up like I did.   Am getting lamer, having sharp pains more frequently, and seem to be drawn over more than I was on the left side.   I can not straighten my body up, and there seems to be something in the back and side of me, and the hip, to be firm like, bound or something, that I can't move or bend it, which has come on gradually. The left leg has gradually grown smaller, but when I am moving about it swells and gets stiff.   My left eye has

failed, and I can't read with it, and my left ear is continually paining, and jerks. It commenced to get worse when I was at the hospital, from that winter on.   *   *   *   Previous to the accident I didn't have anything wrong with me as I know of, or any of the symptoms described here on the stand.   I now have a severe pain on the left part of the forehead and left temple, and behind the left ear; that seems to get larger and swell out," etc.

At the time of the injury appellee was about thirty-six years of age.   The medical experts testified to her condition, and that it was not likely to improve.   One of the physicians testified in part as follows:

"After leaving the hospital I saw her again in December, 1898, at my office on State street.   The patient was stripped, and upon inspection a marked deformity had taken place.   The left foot was turned in, the toe turned in toward the opposite one, and the heel raised from the floor about two inches, the knee bent, and the thigh flexed or bent, and the hip and bone above the hip drawn up about two inches.   The spine was curved to the right side, the shoulders drooping, the left shoulder lower than the right one, the right shoulder blade standing out more prominently than the left one."

Evidence was presented by appellant tending to show other injuries and causes of ill-health preceding the injury here complained of.

Eighteen instructions were tendered to the court by counsel for appellant, of which seventeen were given.   The refused instruction is as follows:

"The uncontradicted evidence in this case is that Sweeney, the driver of the buggy in question, knew that the train of defendant was traveling in the same direction he himself was driving, and it is therefore immaterial whether the bell on the train was or was not sounded."

The trial resulted in a verdict for the appellee, by which her damages were assessed at $7,500.

Upon motion for a new trial it was disclosed, by affidavits presented by appellant, that during the trial the following letter was received by the attorney for appellee:

" DEAR SIR:   Should there be a disagreement in the case of Mrs. Tuerk, it will only be on account of Mr. Korf, a

West Chicago St. R. R. Co. v. Tuerk.

liveryman, acting as a juror. I suspect him to be bribed since Friday evening by the R. R. St. Co.

Yours,

March, 27, '99.                                    AN HONEST MAN."

It was also made to appear by appellant that John Biddy, one of the jurors, asked appellee's attorney, after the return of the verdict, whether he had received a letter, and upon reply by the attorney that he had received an anonymous letter, the juror added, "That is the one I mean." Biddy, the juror in question, made affidavit that he had not written the letter, and had no knowledge by whom the letter was written, and that he had no conversation with any one connected with the case until after the verdict had been returned. The attorney for appellee, to whom the anonymous letter was given, deposed that he had no knowledge as to its authorship, and that the juror Biddy did not ask him about the letter or speak to him concerning the trial until some fifteen hours after the verdict had been returned.

The trial court overruled the motion for a new trial and entered judgment upon the verdict.

JOHN A. ROSE and LOUIS BOISOT, JR., attorneys for appellant; W. W. GURLEY, of counsel.

FRANCIS J. WOOLLEY, attorney for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

From an examination of all the evidence, we are of opinion that it is sufficient to sustain the verdict. Indeed, it is not seriously contended that the verdict is against the weight of the evidence—the ground upon which a reversal of the judgment is sought being alleged errors in procedure, and the contention that the verdict is for an excessive amount.

If, as the jury might reasonably believe from the evidence, the gripman was aware of the position of the buggy, and yet continued to move his car at full rate of speed, while Sweeney was obliged to keep the buggy in the car

tracks ahead of the car by reason of obstructions in the roadway, and if because of the rate of speed of the car and consequent lack of control of it, the collision occurred, then the conclusion of negligence upon the part of appellant as a proximate cause of the injury, is fully warranted. The gripman testified that he was going at the full speed of the cable at the time of the collision. He testified that the buggy was turning into the car tracks when it was struck by the car. But other witnesses testified that the buggy was in the car tracks and was turning out when struck. Appellee testified that the gripman and the driver of the buggy had been talking together. Herzer, one of the witnesses called by appellant, testified:

"When I first saw the buggy it was running at a high speed toward North avenue, on the right side of the street, outside of the track. The way I looked at it, it was more or less of a racing match, but he was trying to get ahead of the car, and it was gaining speed; finally there was some kind of obstruction—what I considered a pile of sand and tool boxes. I had been watching the buggy pretty close, and finally when it came to one point the buggy turned around and it suddenly got struck by the car at what I later saw was a pile of sand."

It is therefore apparent that the gripman was perfectly aware of the relative positions of buggy and car. If, as some witnesses testify, including Sweeney, the driver of the buggy, the buggy was turning out of the tracks when struck, it is also apparent that to approach it so closely at the full speed of the cable was perilous. The evidence, though conflicting, is sufficient to establish negligence as alleged. If the driver of the buggy was also negligent, that fact would not relieve appellant, if appellant's negligence was an efficient, proximate cause of the injury. N. C. St. R. R. Co. v. Dudgeon, 83 Ill. App. 528.

The refused instruction would have told the jury in effect that merely because Sweeney, the driver of the buggy, knew that the car was traveling in the same direction, therefore the gripman was relieved from all duty to warn him of the close approach of the car. It would have been erroneous, and it was properly refused.

Upon notice for a new trial appellant sought to show improper conduct upon the part of one of the jurors. It is not shown that the letter in question was written by the juror, but the contrary appears. It is only shown that some fifteen hours after the return of the verdict, a conversation took place between the juror and the attorney for appellee, which disclosed that the juror was at that time aware that a letter had been sent to the attorney. Matters thus occurring after the return of the verdict, can not be permitted to vitiate verdicts and necessitate new trials.

We are not prepared to hold that the damages assessed are excessive. If appellee is to be credited, and if her physicians are truthful, she is permanently crippled. The evidence referred to in the preceding statement of facts is sufficient to warrant the jury in measuring the damages at the sum fixed. The judgment is affirmed.