JOHN B. SPAHN *vs.* PEOPLES RAILWAY COMPANY, a corporation of the State of Delaware.

1.  MASTER AND SERVANT—INJURIES TO SERVANT—ACTION—ESSENTIALS.

Negligence is the basis of an action by a servant against his master for injuries from a defective appliance.

2.  MASTER AND SERVANT—INJURIES TO SERVANT—ACTION—BURDEN OF PROOF.

In an action by a motorman against his master for injuries received by reason of a defective brake on the car, the burden of proving negligence is on the motorman.

3.  MASTER AND SERVANT—ACTION—DEFENSES—CONTRIBUTORY NEGLIGENCE.

A servant, guilty of contributory negligence, cannot recover for injuries caused partly through his own negligence and partly through that of the master.

4.  MASTER AND SERVANT—INJURIES TO SERVANT—DUTY OF MASTER.

The primary duty of a master towards his servant is to use all reasonable care, proportioned to the danger of the employment, to furnish him with reasonably safe tools and appliances with which to work, though they need not be of the safest, best, or most improved kind; and if the master neglects this duty he is liable for injuries received by the servant because of such neglect.

5.  MASTER AND SERVANT—INJURIES TO SERVANT—APPLIANCES.

A servant has the right to rely on the master's furnishing of safe appliances, and assumes no risk of injury because of defects therein.

6.  MASTER AND SERVANT—INJURIES TO SERVANT—RISKS ASSUMED.

A servant assumes all of the ordinary risks incident to the employment, and such as are patent or may be discovered by the ordinary use of his senses'

7. MASTER AND SERVANT—INJURIES TO SERVANT—DUTY OF SERVANT.

A master is not an insurer of his servants; the servant being bound to use ordinary care for his own safety.

8. MASTER AND SERVANT—INJURIES TO SERVANT—SAFE APPLIANCES.

A master is bound, not only to furnish reasonably safe appliances, but also to use due diligence to keep them in a reasonably safe condition so long as used.

9. MASTER AND SERVANT—INJURIES TO SERVANT—VICE PRINCIPALS.

Notice given to the foreman or person in general charge of a master's business of defective appliances is notice to the master.

10. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK.

Where a servant, with knowledge of the defect, continues to use a dangerous appliance, the master is not liable for resulting injury, though if the master promises to remedy the defect, and the servant, relying on that promise, is injured while using it for a reasonable time, the master is liable.

11. MASTER AND SERVANT—INJURIES TO SERVANT—DUTY OF INSPECTION.

A motorman, injured because of a defective brake, on an electric car, cannot recover, where the defect could not have been discovered by a reasonable inspection, or occurred while in use or after inspection; the master being bound only to use reasonable care to furnish safe appliances.

12. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

A motorman of an electric car, who received injuries, owing to his running the car at an unusual and excessive rate of speed, letting it get from under his control, cannot recover, being guilty of contributory negligence.

13. EVIDENCE—PROVINCE OF JURY—CONFLICTING EVIDENCE.

It is the duty of the jury, where the evidence is conflicting, to reconcile it, if possible, but, if impossible, to decide in favor of that party whose evidence preponderates.

14. EVIDENCE—CREDIBILITY—DETERMINATION.

In determining the weight of the testimony and credibility of witnesses, the jury should consider the apparent fairness and interest or bias of the witnesses, together with their opportunity to see and know of the accident.

15. DAMAGES—PERSONAL INJURIES.

Where a motorman received personal injuries, owing to a collision caused by a defective brake on his car, he is entitled to such damages as will compensate him for money expended for medical attendance, for his suffering in the past, and for such as he may endure in the future, together with loss of wages in the past and any impairment of earning power for the future which is due to defendant's negligence.

(*February* 9, 1912.)

PENNEWILL, C. J., and WOOLLEY, J., sitting.

*W. W. Knowles* and *Caleb E. Burchenal* for plaintiff.

*Robert H. Richards* for defendant.

Superior Court, New Castle County, February Term, 1912.

ACTION ON THE CASE (No. 91, May Term, 1911), brought by the plaintiff who at the time was employed as a motorman by the defendant, to recover damages for personal injuries. Said injuries were alleged to have been sustained on account of the negligence of the defendant in not furnishing the plaintiff with reasonably safe appliances, to wit, brakes. The contention of the plaintiff was that by reason of the imperfect and defective condition of the brakes upon the car which he was operating as the servant of the defendant, he was unable to stop the car, and by reason thereof, collided with another trolley car and was thereby injured. Verdict for plaintiff.

Further facts and questions presented appear in the charge of the court.

### PLAINTIFF'S PRAYERS.

That it is the primary duty of the master to provide suitable and reasonably safe tools and machinery for the servant, with which to perform a particular work in which he is engaged. If the master shall fail in the performance of his primary duty, he is liable to the servant for whatever injury he may suffer resulting alone from such failure. In the performance of this duty, the master must use all reasonable care and prudence for the safety of the servant, having regard to the character of the work to be performed. Such care must always be in proportion to the danger of the employment. The servant has the right to rely upon the master for the proper performance of this duty without inquiry on his part. *Lawless Admr. v. P. & J. Co.*, 3 *Penn.* 1, 3; *Ray v. D. S. Steel Co.*, 2 *Penn.* 525, 527; *Boyd v. Blumenthal*, 3 *Penn.* 564, 567; *Winkler v. P. & R. Ry.*, 4 *Penn.* 80, 83; *Strattner v. Wil. City Elec. Co.*, 3 *Penn.* 245, 247.

That notice of defects in machinery and appliances given to a dispatcher of the company having charge and control of the men and the cars, is notice to the company and the promise to remedy the defect made by such dispatcher is a promise of the company in law. *Ray v. D. S. Steel Co.*, 2 *Penn.* 525, 528; *Boyd v. Blumenthal*, 3 *Penn.* 564, 568.

That when machinery is defective in the knowledge of the employee, yet if the master promises to remedy the defect and the employee relying on that promise, continues to use it for a reasonable time, he does so at the master's risk, inasmuch as he has a right to rely on such promise. *Boyd v. Blumenthal*, 3 *Penn.* 564, 567; *Ray v. D. S. Steel Co.*, 2 *Penn.* 525, 528.

If the jury find for the plaintiff their verdict should be for such sum as in their judgment from the testimony will reasonably compensate the plaintiff for his injuries including his loss of time and wages and money expended in medical treatment, his pain and suffering in the past and such future suffering as may result from the accident and he may also recover for permanent injuries received, such sum as will cover the pecuniary loss because of his inability to earn a living in the future. *Murphy v. Hughes Bros. & Bangs*, 1 *Penn.* 250, 262; *Ray v. D. S. Steel Co.*, 2 *Penn.* 525, 529; *Boyd v. Blumenthal & Co.*, 3 *Penn.* 564, 569; *Winkler v. P. & R. Ry. Co.*, 4 *Penn.* 80, 87.

## DEFENDANT'S PRAYERS.

The gist of this action is negligence and the burden of proving the negligence of the defendant rests upon the plaintiff. If there was no negligence on the part of the company the verdict should be for the defendant.

Even if there was negligence on the part of the defendant, yet if the negligence of the plaintiff contributed to the accident at the time thereof, the verdict should be for the defendant. Where there is contributory negligence, the law will not attempt to measure the proportion of blame or negligence to be attributed to each party. *Snyder v. Peoples Ry. Co.*, 4 *Penn.* 150; many other *Delaware cases*.

Contributory negligence is the negligence of the plaintiff, or of the person on account of whose injury the action is brought, amounting to a want of ordinary care, and approximately contributing to bring about the injury. 1 *Thompson on Negligence*, § 169, *page* 167.

If the defendant exercised reasonable care in the inspection

of the trolley car which the plaintiff was operating at the time of the accident and that the brakes of said car, or other appliances complained of, when last inspected before the accident, were in reasonably good working condition and that any defect or disorder (if any) in any of said appliances was not discovered sufficiently long before the accident as to reasonably permit the repair thereof or the discontinuance of the operation of such car, in such event the existence of such defect or disorder would not constitute negligence on the part of the defendant.

If the defendant exercised reasonable care in the inspection of the car in question and of the brakes and other appliances thereon, and that the same were found in reasonably good working condition when the car was turned over to the plaintiff to operate as a motorman, shortly before the accident, and that any defect or disorder (if any) in said appliances occurred during the operation of the car by the plaintiff, and that there was no opportunity to repair the same or discontinue the use of the car before the accident, in such event the existence of such defect or disorder would not constitute negligence on the part of the defendant.

It is only the duty of the defendant to furnish its motormen with reasonably safe cars equipped with reasonably safe appliances for operation, and the motormen as a part of the conditions of their employment in that capacity, must assume the risk of defects or disorders that occur in the working parts of the car *while being operated* by such *motormen*, and when such defects or disorders appear in said cars while *under the control and operation of such motormen* they are bound to use their best judgment and discretion for the repair, operation or discontinuance of operation of such cars.

Instruction as to the difference between the responsibility of the defendant company to its employees and its responsibility to passengers or third persons.


PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—The plaintiff in this action seeks to recover from the defendant company damages for personal injur-

ies which are alleged to have been sustained on account of the negligence of said company.

The plaintiff claims that about eleven o'clock on the night of August 14, 1911, he was motoring a car of the defendant from Brandywine Springs to the City of Wilmington, and because of defective brakes on the car, which would not take hold of the wheels, he was unable to stop or hold the car when descending a grade near Haley's curve, and in consequence thereof his car collided with another car and he was injured.

The plaintiff's declaration consists of two counts, one of which avers that the said defendant negligently and carelessly suffered and permitted the said plaintiff to use and operate a certain car with an improper, defective, inadequate, unfit, unsafe, unsuitable and dangerous brake shoe, all of which was well known to the said defendant but unknown to the said plaintiff, and by reason of the said negligence of the said defendant in permitting the use of said car with the defective brake shoe as aforesaid at the time and place aforesaid, the said car on which the said plaintiff was a motorman as aforesaid ran into and collided with another car operated and controlled by the said defendant, whereby the said plaintiff was greatly bruised, cut, mangled, broken, injured and distressed.

The second count is similar to the first, except that the word "brakes" is used in the second count instead of "brake shoe," as in the first count.

So that, the negligence averred, and relied upon, by the plaintiff is, that the defendant suffered and permitted the plaintiff to use and operate the car with a defective, unsafe and dangerous brake shoe, or brakes.

[1-3] The gist of this action is negligence, which is the want of ordinary care, and the burden of proving the negligence of the defendant rests upon the plaintiff. If there was no negligence on the part of the company your verdict should be for the defendant. Even if there was negligence on the part of the defendant, yet if the negligence of the plaintiff contributed proximately to the accident at the time thereof, the plaintiff cannot recover. In such case the plaintiff would himself be guilty of contributory negligence,

and where there is such negligence the law will not attempt to measure the proportion of blame or negligence to be attributed to each party.

Contributory negligence has been defined to be the negligence of the plaintiff, or of the person on account of whose injury the action is brought, amounting to a want of ordinary care, and approximately contributing to the injury.

[4-7] The relation existing between the defendant and the plaintiff at the time of the accident was that of master and servant, and the primary duty imposed upon the defendant towards the plaintiff in the course of his employment by reason of this relation was to furnish him reasonably safe tools, machinery and appliances with which to work. The tools or machinery used need not be of the safest, best nor of the most approved kind. It is sufficient if they are reasonably safe, and adapted to the purpose of the employment. If the master fails to observe this rule of law and injury results to his servant from such failure, he becomes liable therefor on the ground of negligence. In the performance of this duty the master must use all reasonable care and prudence for the safety of the servant, having regard to the character of the work to be performed. Such care must be in proportion to the danger of the employment. The servant has the right to rely on the master for the performance of this duty without inquiry on his part. The servant assumes no risk whatever as to such primary duty at the time he enters upon his employment; but he does assume all the ordinary risks incident to the employment; such as are patent, seen and known, or which may be seen and known by the ordinary use of his senses. And he is required to exercise due care and caution in the course of his employment to avoid dangers and injuries; for the master, having performed the primary duties required of him, is not an insurer of the safety of his servants.

[8-10] "It is the duty of the master also to maintain said tools and machinery in a reasonably safe condition so long as they are continued in use. If the master knows, or by the use of due diligence might know that the tools and machinery in use in his business are not reasonably safe it is negligence on his part to fail

to remedy and correct the defects of which he has knowledge or by the exercise of due diligence he might discover. Notice to the foreman or person in general charge of the business, or having charge and control of the men and the cars, that the machinery is unsafe or dangerous, is, in law, notice to the master; and after the receipt of such notice it would be negligence on the part of the master to fail to make such machinery reasonably safe for the servant in his employment. But in such case the master would not be liable if the servant having knowledge of such defect continued to use such machinery. The servant must always exercise such care and caution to avoid danger as the circumstances reasonably require, and the greater the danger the greater the care, diligence and caution required."

But even though machinery is defective in the knowledge of the employee, yet if the master has knowledge of such defect and promises to remedy the defect, and the employee, relying on that promise, continues by direction of the master to use it for a reasonable time, he does so at the master's risk, inasmuch as he has a right to rely on such promise. *Boyd v. Blumenthal*, 3 *Penn.* 567, 52 *Atl.* 330; *Ray v. D. S. Steel Co.*, 2 *Penn.* 528, 47 *Atl.* 1017.

[11] If you should believe from the evidence that the defendant exercised reasonable care in the inspection of the trolley car which the plaintiff was operating at the time of the accident, and that the brakes of said car, or other appliances complained of, when last inspected before the accident, were in reasonably good working condition, and that any defect or disorder (if any) in any of said appliances was not discovered sufficiently long before the accident to reasonably permit the repair thereof or the discontinuance of the operation of such car, in such event the existence of such defect or disorder would not constitute negligence on the part of the defendant.

If you should believe from the evidence that the defendant exercised reasonable care in the inspection of the car in question and of the brakes and other appliances thereon, and that the same were found in reasonably good working condition when the car was turned over to the plaintiff to operate as a motorman, shortly before the accident, and that any defect or disorder (if any) in

said appliances occurred during the operation of the car by the plaintiff, and that there was no opportunity to repair the same or discontinue the use of the car before the accident, in such event the existence of such defect or disorder would not constitute negligence on the part of the defendant.

If you should believe from the evidence that the plaintiff knew on the day of the accident and before he began to operate car No. 6 that the brake of said car was defective, and should also believe from the evidence that the defendant did not promise to remedy said defect upon any complaint thereof by the plaintiff, and that the plaintiff took said car out and operated it with knowledge of such defective brake, then the plaintiff assumed the risk of operating said car with such defective brake, and cannot recover for any injury to himself caused by such defective condition of such brake.

[12]  It is the duty of a motorman to so run and operate his car as to have it under proper control, and be able to stop it, or reduce its speed whenever necessary to avoid accident, if by proper care and caution he can do so.  Therefore, if you believe from the testimony in this case that the brakes were not defective, and that the plaintiff's injuries were caused by his running the car at such a high, excessive and unusual rate of speed, or by such improper handling of the brakes, that he was not able at, and just before the collision, to stop or control the car by the means provided for the purpose, he would be guilty of contributory negligence and could not recover.

[13-14]  Where there is a conflict of evidence, as there is in this case, it is the duty of the jury to reconcile it if they can, but if they cannot do so, then it becomes their duty to render their verdict in favor of that side upon which the evidence reasonably and clearly preponderates.  In determining the weight of the testimony and the credibility of the witnesses, the jury may consider the apparent fairness, interest or bias of the witnesses, if any, their opportunity to see and know of the accident, their recollection of the circumstances connected therewith, and any and all other facts and circumstances that go to test the accuracy of their testimony.

Verdict—Motion for New Trial.

[15]  If you believe from the preponderance, that is, the weight of the evidence, that the injuries of which the plaintiff complains in this action were caused by the negligence of the defendant company, remembering the law as we have stated it, and applying it to the facts in the case; and shall also believe that the plaintiff at the time of the accident was himself entirely free from any negligence that proximately contributed to his injuries, your verdict should be for the plaintiff, and for such sum as you believe from the testimony will reasonably compensate him for any money laid out and expended for medical attendance, for his pain and suffering in the past, and for such as may be in the future, resulting from the defendant's negligence; and also for any loss of wages suffered by him in the past, as well as for any impairment of ability to earn a living in the future, as may be shown to be the result of the defendant's negligence.

If you are not satisfied by the preponderance of the evidence that the plaintiff's injuries were caused by the negligence of the defendant; or if you believe from the testimony that the plaintiff's own negligence, or want of care and caution, contributed proximately to his injuries, your verdict should be in favor of the defendant.

Verdict for plaintiff.

The attorney for the defendant on February twelfth moved for a new trial and filed reasons therefor, which substantially appear in the opinion of the court.

## ARGUMENT FOR DEFENDANT ON MOTION FOR NEW TRIAL.

The plaintiff had no bones broken, lost none of the members of his body, nor was any part of his body disabled from performing its ordinary functions.  The main injury proved was a mashing of the muscles of his right leg above the knee.  At the time of trial, he walked without crutch or cane and with but slight limp. He was able to bend his right leg in any manner that a normal person could, but claimed that he suffered pain from bending said leg in certain positions.  He claimed the right leg to be weaker than before the accident and permanently so.

The following cases are cited to sustain the contention that the verdict for $7,519.00 is excessive, under the evidence describing the plaintiff's injuries. *Winkler v. The P. & R. R. R. Co.*, 4 *Penn.* 88; *Kennedy v. The St. Paul R. Co.*, 59 *Minn.* 45; *Brownson v. R. R. Co.*, 67 *Hun.* 649; *Slette v. Great Northern R. Co.*, 53 *Minn.* 341; *Chicago, etc., R. R. Co. v. McAra*, 52 *Ill.* 296; *Missouri Pacific Ry. Co. v. Tex. Pac. Ry. Co.*, 41 *Fed.* 311; *Fremont, &c., R. R. Co. v. French*, 48 *Neb.* 638; *Langley v. R. R. Co.*, 48 *N. Y. Super Ct.* 542; *Bosworth v. Standard Oil Company*, 92 *Hun.* 485; *Sioux City Ry. Co. v. Finlayson*, 16 *Neb.* 578; *Clapp v. Hudson River R. R. Co.*, 19 *Barbour* 461; *Union Pacific R. R. Co. v. Hand*, 7 *Kan.* 380; *Cogswell v. R. R. Co.*, 5 *Wash. St. Rep.* 46; *Florida Ry., &c., Co. v. Webster*, 25 *Fla.* 394, (5 *So.* 714); *International, &c., Ry. Co. v. Hall*, 78 *Tex.* 657; *Stiller v. Bohn Mfg. Co.*, 82 *N. W.* 982; *Thompson v. Chicago &c., R. R. Co.*, 71 *Minn.* 89; *Louisville &c. R. R. Co. v. Foley*, 94 *Ky.* 220; *Gahagan v. Aermotor Co.*, 67 *Minn.* 252; *Fry v. Great Northern Ry. Co.*, 95 *Minn.* 87; *Texas &c. R. Co. v. Syfan*, 43 *S. W.* 551.

Courts have wisely said that, in awarding damages for personal injuries, the best criterion is the average amount awarded for injuries of a like nature and extent; and, where the verdict largely exceeds this average, it is excessive. *Lockwood v. Twenty-third St. Ry. Co.*, 7 *N. Y. Supp.* 663.

This proposition when applied to any particular case, it would seem, should be justly modified by limiting the consideration or the determination of the average amount awarded for injuries of a like nature and extent to the jurisdiction in which the case is tried.

It is contended by the defendant in this case that the verdict is grossly and shockingly in excess of what have been the verdicts of juries in this state in personal injury suits. See *Seininski v. Wil. Leather Co.*, 2 *Boyce* 118; *Boyd v. Blumenthal*, 3 *Penn.* 564; *Giordano v. The Brandywine Granite Co.*, 3 *Penn.* 423; *Strattner v. Wil. City Electric Company*, 3 *Penn.* 245; *Giles v. Diamond State Iron Co.*, 7 *Houst.* 453; *Eaton v. Wil. City Ry. Co.*, 1 *Penn.* 435; *Heinel v. Peoples Ry. Co.*, 6 *Penn.* 428; *Duggan v. Wil. & N. J. Ferry Co.*, 7 *Penn.* 229; *McCartney v. Peoples Ry. Co.*, 2 *Boyce* 191; *Coyle v. Peoples Ry. Co.*, 7 *Penn.* 454.

The seventh and eighth reasons for a new trial are based on the misconduct of counsel for the plaintiff during the trial of the cause.

The first mentioned misconduct was obviously improper and tended to create impressions in the minds of the jury prejudicial to the defendant. The very fact that the foreman of the jury was engaged in a hunt for protuberances on the plaintiff's leg without the ability to see that what he found was genuine or counterfeit, or to perceive whether any so-called protuberances or cavities were caused by peculiar methods of bandaging or what-not, makes it clear that the conduct was improper and tended to the prejudice of the defendant.

The matter of granting new trials is within the discretion of the court, and courts have many times granted new trials on the ground of improper statements made by counsel in argument to the jury when such statements were not objected to by the opposing counsel at the time. *Preston v. Mutual Life Insurance Company of New York*, 71 *Fed.* 468; *Kinnaman v. Kinnaman*, 71 *Ind.* 417; *Hall v. Wolf*, 61 *Ia.* 559; *Shuette v. St. Louis &c. Ry. Co.*, 82 *S. W.* 541; *Houston &c. Ry. Co. v. Reahm*, 82 *S. W.* 526; *Chicago &c. Ry. Co. v. Kellogg*, 76 *N. W.* 462; *Prather v. McClelland*, 26 *S. W.* 657; *Cook v. Doud*, 32 *Pac.* 906; *Bullard v. Boston & Me. R. R. Co.*, 64 *N. H.* 27.

The expectancy of life of the plaintiff is a fact that might have been given in evidence at the trial. It is a fact material to the amount of damages to which the plaintiff would be entitled if the jury found a verdict for the plaintiff. It was proper evidence, therefore, to adduce at the trial on the part of the plaintiff. It was not, however, so adduced. Whether the expectancy of life assumed by the jury is correct or not, I do not know, but it is immaterial whether correct or not. The jury had no right to consider such fact, or assumed fact, in arriving at the amount of their verdict. They must be bound by the evidence and can consider nothing but the evidence in arriving at their verdict.

It is a ground for a new trial if the jury received outside evidence, that is, evidence not adduced at the trial, or if members of the jury, after they have retired for deliberation, state facts ma-

terial to the case and affecting the verdict.   29 *Cyc.* 802, 810·
*Mitchell v. Carter*, 14 *Hun.* 448;  *Fuller v. Fletcher*, 44 *Fed.* 34;
*Hydinger v. Chicago &c. R. R. Co.*, 126 *Ia.* 222;  *Douglas v. Agne*,
125 *Ia.* 67;  *Miller v. Dubuque*, 111 *Ia.* 484;  *Atchison &c. R. R.
Co. v. Bayes*, 22 *Pac.* 74;  *McIntire v. Hussey*, 57 *Me.* 493;  *Woodriver
Bank v. Dodge*, 55 *N. W.* 234;  *Bradley v. Bradley*, 4 *Dallas* 112
(1 *Law Ed.* 763);  *Wade v. Ordway*, 1 *Baxter (Tenn.)* 229.

In the third reason for a new trial, it is contended that the
portion of court's charge complained of is a misstatement of the
law, but it is contended that the same is a statement of the law
which had no proper application to the case at bar.   It is respect-
fully submitted that the language complained of discusses princi-
pally machinery and tools and the duty of a master in furnishing
his servants with reasonably safe tools and machinery.   There
was nothing in this case to which any instructions about tools or
machinery was pertinent.

In the fourth reason for a new trial is that portion of the
court's charge complained of which is the language of a prayer
submitted to the court by the defendant, with the addition of
the words, "and had no knowledge of said defect", which so
changed the prayer as to make the same an incorrect statement
of the law and one which might well affect the minds of the jury
in arriving at their verdict.

If the servant knows that an appliance with which he works
is defective and with full knowledge of such defective condition
of said appliance proceeds to use the same in his work, such ser-
vant assumes the risk of such defective appliance regardless of
whether the master has knowledge of the defect or not.   The
thing pertinent to the case at bar which will relieve the servant of
such risk is the promise of the master to repair the defect.   The
effect of such promise is in substance an agreement between the
master and the servant by which the master agrees that if the
servant will continue to work or proceed to work with the defec-
tive appliance he, the master, will, by implication, assume all the
risks and consequences of such conduct on the part of the ser-
vant.   *Labatt on Master and Servant*, § 423-424.

26 Del.]        Spahn vs. Peoples Railway Co.        315

Motion for New Trial—Argument.

Argument for Plaintiff on Motion for New Trial.

It is a general principle of law that the decision of a jury upon any issue of fact is generally irreversible and conclusive. 1 *Woolley on Del. Practice*, § 733, *p.* 514.

The court will not set aside a verdict founded on conflicting evidence, though it would have drawn a different conclusion from that of the jury. 1 *Woolley on Del. Practice*, § 735, *p.* 515; *Burton v. Railway Co.*, 4 *Harr.* 252, 254.

The preponderance of testimony on every point at issue was in favor of the plaintiff, first; as to notice given to the dispatcher; second, as to the time of leaving Brandywine Springs; third, as to the speed of the car; fourth, as to the fact that the car was running away and not sliding; fifth, that Spahn stood at his post of duty and did all in his power to prevent the runaway; sixth, that the brakes refused to work because they were worn out.

It is for the jury to reconcile the testimony if they can, and if they cannot, then they are the sole judges of the interest, bias, truthfulness and recollection of witnesses. *Benson v. Wil. City Ry.*, 1 *Boyce* 202, 207.

As to the third reason for a new trial, we submit that the court charged the jury in accord with the settled law of the State of Delaware. *Creswell v. W. & N. R. R. Co.*, 2 *Penn.* 210, 215; *T. & P. Ry. Co. v. Archibald*, 170 *U. S.* 671, 672; *Winkler v. P. & R. Ry. Co.* 4 *Penn.* 80, 83; *Lawless Admr. v. P. & J. Co.*, 3 *Penn.* 1, 3; *Boyd v. Blumenthal Co.*, 3 *Penn.* 564, 567; *Strattner v. Wil. City Elec. Co.*, 3 *Penn.* 245, 247; 4 *Thompson Commentaries on Negligence*, § 3995, *page* 378; *Cooley on Torts (Student's Ed.)* § 268; *Ray v. D. S. Steel Co.*, 2 *Penn.* 525, 528.

As to the fourth reason assigned, the charge of the court is clearly the law of this state as it is a well settled principle that an employee assumes the risk of defects in appliances and machinery of which he is aware and of which the master is not aware. *Creswell v. W. & N. R. R. Co.*, 2 *Penn.* 210, 216; *Texas & Pac. Ry. Co. v. Archibald*, 170 *U. S.* 671, 672; *Winkler v. P. & R. Ry. Co.*, 4 *Penn.* 80, 84; *Boyd v. Blumenthal Co.*, 3 *Penn.* 564, 567.

The reported cases of this state contain only a very few instances where the court has granted a new trial because the verdict was excessive which is evidence of the settled policy of the court to exercise this extreme measure, only in cases of manifest injustice.

The injuries and suffering of the plaintiff warrant the verdict for seven thousand five hundred and nineteen dollars.

The testimony reveals that car No. 6, on which the plaintiff was motoring, ran into the rear end of car No. 25 and mashed in the whole front part of car No. 6 on the legs of the plaintiff and pinned him down under the controller box, injuring the right leg above the knee and it tore the heel off the shoe of the left foot and stripped around the calf of the left leg from the knee down to the heel.

The injury is permanent and will always impair the use of his leg and the condition is likely to become worse. The muscles just above the knee of the right leg have grown together which interferes with the intervening motions.

The verdict was not excessive because of plaintiff's impaired ability to earn a living in the future. He is unable to work at his trade of a roofer because he could not get on his knees or climb a ladder and at his trade he made from sixteen to eighteen dollars per week.

This verdict is not excessive as compared with verdicts in other states which the courts would not disturb. *Clark v. Brooklyn Hts. Co.*, 78 *App. Div.* (*N. Y.*) 478; *Houston City Ry. v. Medlenka*, 17 *Tex. Civ. App.* 621; *Furman v. Brooklyn Hts. Co.*, 25 *App. Div.* (*N. Y.*) 133; *Cooper v. St. Paul City Ry. Co.*, 54 *Minn.* 379; *Galveston City R. Co. v. Hewitt*, 67 *Texas* 473; *Swain v. Fourteenth St. R. Co.*, 93 *Cal.* 179; *West Chicago St. R. Co. v. Tuerk*, 90 *Ill. App.* 105; *Chicago City Ry. Co. v. Anderson,* 93 *Ill. App.* 419.

In an application for a new trial for excessive damages "damages ought not to be weighed in a nice balance, but must be such as appear at first blush to be outrageous and indicate passion or partiality in the jury." *Tidd's Practice, page* 908.

The seventh reason for a new trial is not in proper form to be considered by this court as there is no averment in the said

reason that the alleged misconduct did in fact influence the jury and that averment must also be supported by an affidavit that the misconduct influenced the jury. 1 *Woolley on Delaware Practice*, § 742, *page* 517; *Rothwell v. Elliott*, 2 *Marv.* 151, 153; *Pritchard v. Henderson*, 3 *Penn.* 128, 151.

There can be little doubt but that the leg of the plaintiff could have been uncovered for the inspection of the jury. 2 *Wigmore on Evidence*, § 1151; *Langworthy v. Tp. of Green*, 95 *Mich.* 93, 97; *L. N. A. & C. Ry. Co. v. Wood*, 113 *Ind.* 544, 548; 4 *Ency. of Evidence*, *page* 281, note 72.

"Anything cognizable by the senses of the tribunal may thus be offered." 2 *Wigmore on Ev.*, § 1152.

A new trial will not be granted for the admission of improper evidence or misconduct on the part of the counsel unless there be ground to believe that injustice has been done by its effect. *Crory v. Sprague*, 12 *Wend.* 41, *N. Y. Sup. Court*.

In making an application for a new trial upon the ground that improper statements were made to the jury by counsel, the reason for the new trial should contain the averment supported by affidavit that the words spoken did in fact influence the jury. 1 *Woolley on Delaware Practice*, § 742, *page* 517; *Rothwell v. Elliott*, 2 *Marv.* 151, 153; *Pritchard v. Henderson*, 3 *Penn.* 128, 151.

No objection was made at the time the statements were made, and it is deemed waived and cannot be availed of on motion for a new trial. *Hudson v. Pettijohn*, 4 *Harr.* 356, 357; *Lynch v. Peabody*, 137 *Mass.* 92, 93, 94; *Leonard v. Hall*, 133 *Mass.* 417, 419; *Powers v. Mitchell*, 77 *Me.* 361, 368; *Hilliard on New Trial*, 93.

Objection to any irregularity must be made at the proper time or else is deemed waived. *Duplex P. P. Co. v. Journal P. Co.*, 1 *Penn.* 565, 580.

PENNEWILL, C. J., delivering the opinion of the court:

The defendant asks that the verdict rendered in the above stated cause be set aside, and that a new trial be granted, for the following reasons, viz.:

1. That the verdict was against the law.
2. That the verdict was against the weight of the evidence.

3. That the court, in charging and instructing the jury, erroneously charged as follows:

"The relation existing between the defendant and the plaintiff at the time of the accident was that of master and servant, and the primary duty imposed upon the defendant towards the plaintiff in the course of his employment by reason of this relation was to furnish him reasonably safe tools, machinery and appliances with which to work. The tools or machinery used need not be of the safest, best, nor of the most improved kind. It is sufficient if they are reasonably safe, and adapted to the purpose of the employment. If the master fails to observe this rule of law and injury results to his servant from such failure, he becomes liable therefor on the ground of negligence. In the performance of this duty the master must use all reasonable care and prudence for the safety of the servant, having regard to the character of the work to be performed. Such care must be in proportion to the danger of the employment. The servant has the right to rely on the master for the performance of this duty without inquiry on his part. The servant assumes no risk whatever as to such primary duty at the time he enters upon his employment; but he does assume all the ordinary risks incident to the employment, such as are patent, seen and known, or which may be seen and known by the ordinary use of his senses. And he is required to exercise due care and caution in the course of his employment to avoid dangers and injuries; for the master, having performed the primary duties required of him, is not an insurer of the safety of his servants.

"It is the duty of the master also to maintain said tools and machinery in a reasonably safe condition so long as they are continued in use. If the master knows, or by the use of due diligence might know that the tools and machinery in use in his business are not reasonably safe it is negligence on his part to fail to remedy and correct the defects of which he has knowledge or by the exercise of due diligence he might discover. Notice to the foreman or person in general charge of the business, or having charge and control of the men on the cars, that the machinery is unsafe or dangerous, is, in law, notice to the master; and after the

receipt of such notice it would be negligence on the part of the master to fail to make such machinery reasonably safe for the servant in his employment. But in such case the master would not be liable if the servant having knowledge of such defect continued to use such machinery. The servant must always exercise such care and caution to avoid danger as the circumstances reasonably require, and the greater the danger the greater the care, diligence and caution required."

4. That the court in charging and instructing the jury, erroneously charged as follows:

"If you should believe from the evidence that the plaintiff knew on the day of the accident and before he began to operate car No. 6 that the brake of said car was defective, and should also believe from the evidence that the defendant did not promise to remedy said defect upon any complaint thereof, by the plaintiff, and had no knowledge of said defect, and that the plaintiff took said car out and operated it with knowledge of such defective brake, then the plaintiff assumed the risk of operating said car with such defective brake and cannot recover for any injury to himself caused by such defective condition of such brake."

5. That under the circumstances of the case, the verdict was excessive.

6. That under the circumstances of the case, the amount of damages awarded by the jury by its verdict is and was excessive.

7. That one of the "counsel for the plaintiff, during the progress of the trial was guilty of misconduct, in that, during the testimony of the plaintiff as a witness, while he, Mr. Knowles, was having the plaintiff demonstrate before the jury the character and extent of his injuries, he, Mr. Knowles, did instruct and direct the foreman of the jury to feel with his hands the leg of the plaintiff, outside the trousers and other clothing of the plaintiff, for the purpose of discovering protuberances or cavities in the leg of the plaintiff alleged to have been caused by the accident in question, and the said foreman of the said jury did with his hands feel the leg of the said plaintiff over the trousers and other clothing of the said plaintiff for the purpose aforesaid, before counsel for the defendant could succeed in stopping this procedure

by objection, which procedure was objected to and was eventually stopped by counsel for the defendant, and all of which occurred in open court during the trial of said cause."

8.    That one of the "counsel for the plaintiff, was guilty of misconduct during the trial of the cause, in his argument to the jury, in that he did inform the jury of an accident sustained by himself some years ago in which he did sustain, as he alleged and stated to the jury, a serious injury to his knee, and in informing the jury of such accident and injury to himself he did tell the jury about the pain and suffering experienced by himself and did inform the jury of the serious and permanent results of his injury and did state to them that his injured knee would never be as strong as it was before and that his injury, thus received, was by a fall more serious than the injury to the plaintiff; all of which statements by said counsel to said jury, in his said argument, were highly prejudicial and made for the purpose and with the intent of prejudicing and influencing the minds of the jury, and said statements were made and finished so quickly as that counsel for the defendant had no opportunity to object thereto until after they were completed."

9.    "That the verdict of the said jury was arrived at improperly, in that the said jury took into consideration in reaching their verdict facts or assumptions which were not supported by, contained in, or deducible from, any evidence produced in the case, to wit, the jury assumed, or were informed from sources other than the evidence produced in the case, that the expectancy of life of the plaintiff, according to the mortality tables in use by insurance companies, or otherwise, was forty-six years, and upon the assumption of this expectancy of life the jury allowed the plaintiff the sum of three dollars per week for forty-six years and thus, with certain small additions, arrived at the amount of their verdict."

10.    "That the amount of the verdict rendered by the jury is excessive even in accordance with the jury's own theory, desire and intent as to the compensation which they desired to allow the plaintiff, in this, that the jury desired and intended and tried to allow the plaintiff a compensation of three dollars per week for the balance of his life, and to do this, without evidence admitted

to fix his expectancy of life they proceeded to give him three dollars per week for forty-six years, whereas, to carry out their desire and intent, they should have capitalized the compensation of three dollars per week and have given the plaintiff a sum of money which, at the legal rate of interest, would have produced the compensation of three dollars per week which they desired he should have."

We will briefly consider all the reasons assigned, but not specifically, or in the order above stated.

By the third reason we understand is meant, that the court in that particular part of the charge which defined the primary duty of the master in respect to furnishing tools, machinery and appliances, omitted in two instances the word "appliances". It is argued that the brake of a car is not a tool or machinery. It is sufficient to say upon this point, that even if a car brake cannot be strictly termed a tool or machinery, it is admitted to be an appliance. The court charged the jury that, "the primary duty imposed upon the defendant towards the plaintiff in the course of his employment by reason of this relation (master and servant) was to furnish him reasonably safe tools, machinery and appliances with which to work." It is true that the court, continuing, said: "The tools or machinery used need not be of the safest, best, nor of the most improved kind", etc.; but it is inconceivable that the jury, because of the omission of the word "appliances" in that connection, could have been misled as to the duty of the defendant. When the entire instruction is considered it is manifest that it had reference to the brake of the car, by whatever name it may be called, for the negligence averred had reference to that only.

The court also said upon the same point: "It is the duty of the master to maintain said tools and machinery in a reasonably safe condition so long as they are continued in use." While all we have said above equally applies here, it may be further observed that the omission of the word "appliances" in this instruction could not possibly have worked an injury to the defendant, because the court was speaking of a duty imposed upon the master, and if "tools and machinery" did not embrace "appliances"

or "car brakes", the defendant was not injured; and if the term did embrace the "car brakes" the instruction was proper.

The part of the charge covered by the fourth reason was in the exact language of defendant's prayer, except that the words "and had no knowledge of said defect" were interpolated. In considering this objection we must take the entire charge, and not the isolated portion only upon which the objection is founded. The court had previously told the jury, "that if the master knows, or by the use of due diligence might know that the tools and machinery in use in his business are not reasonably safe, it is negligence on his part to fail to remedy and correct the defects of which he has knowledge, or by the exercise of due diligence he might discover." It was this primary duty of the master the court had in mind when the words objected to were inserted. But, the court had, earlier in the charge, expressly instructed the jury as follows: "But in such case (that is, after notice to the master of the defect) the master would not be liable if the servant, having knowledge of such defect, continued to use such machinery." The word "machinery" as there used could have reference only to the car brake, because nothing else was alleged to be defective. This instruction was substantially the defendant's prayer, and fully as favorable to the company as the prayer could have been if it had not been modified. So we say, taking the entire charge— both that which preceded as well as that which followed the words objected to, and especially the specific instruction that the master, after notice "would not be liable if the servant, having knowledge of the defect, continued to use such machinery," the jury could not have been misled; and, therefore, even if there was error in the instruction when considered apart from the whole charge, it was harmless, and in no wise prejudicial to the rights of the defendant.

The seventh reason assigned, is that the foreman of the jury, at the request of plaintiff's counsel, "felt with his hands the leg of the plaintiff, outside the trousers and other clothing of the plaintiff, for the purpose of discovering protuberances or cavities in the leg of the plaintiff."

If the plaintiff believed such act of the foreman, performed

at the plaintiff's request was improper, for the reason that the supposed "protuberances" or "cavities", might have been caused, purposely or otherwise, by the clothing and not by the leg itself, we think he had the opportunity to object, and should have done so at the time of the proceeding. Besides, the condition of the plaintiff's leg had been fully described by the plaintiff before the examination by the foreman, and such testimony was not in any wise contradicted during the trial. Such examination, therefore, could have been, at the most, only confirmatory of the plaintiff's uncontradicted testimony.

In the eighth reason assigned the defendant complains that one of the plaintiff's counsel, for the purpose of influencing and prejudicing the jury, informed them of an accident sustained by himself some years ago in which his knee was seriously injured, of the pain and suffering experienced therefrom, and of the serious and permanent results of his injury, because of which his knee would never be as strong as it was before the accident.

This incident plaintiff's counsel contends was used only as an illustration justified by the evidence in the case, and was therefore proper under the latitude allowed counsel in their closing arguments to the jury. We think it was not proper because it was something more than a reasonable and fair illustration warranted by the evidence. In referring to his own injury in the manner and language he did, counsel was clearly outside the evidence, or any reasonable inference therefrom, and manifestly his purpose was to influence the jury in determining the amount they should allow the plaintiff for pain and suffering; and for permanent injury. But while this is true, it is equally true that the defendant had ample opportunity to make his objection to the court. No objection, however, was made at the time, and it comes too late now to avail the defendant after the verdict has been rendered. The fact is, that instead of objecting to the remarks now complained of, the defendant's counsel, when he came to address the jury, commented upon said remarks, and attempted to turn the incident against the plaintiff and in favor of the defendant.

It may also be said that it does not appear to the court that the words spoken influenced the jury. In *Woolley's Practice* it is said: "In the progress of a trial counsel should make no statements to the jury that are not supported by the evidence, but if such statements are made, and not objected to at the trial, the verdict will not be disturbed unless it appear that the words spoken influenced the jury. The reason for a new trial should contain the averment supported by affidavit, that the words spoken by counsel did in fact influence the jury."

The ninth and tenth reasons for setting aside the verdict are based on the alleged fact that the verdict of the jury was arrived at improperly, in that they took into consideration, in reaching their verdict, facts or assumptions not supported by, or deducible from, the evidence, to wit; that the expectancy of life of the plaintiff, according to the mortality tables in use by insurance companies, or otherwise, was forty-six years.

In support of this averment the defendant has filed an affidavit made by Richard W. Crook, General Manager of the defendant company, and asks leave to support the same by the sworn testimony of members of the jury, or by the testimony of other persons based on statements made by members of the jury.

The question here distinctly raised, is whether or not the verdict of a jury can be impeached by the testimony or statement of a juror respecting something that occurred in the jury room while the jury were deliberating upon their verdict, and something that materially affected their verdict. In other words, may a juror be permitted to swear, in order to impeach his verdict, that the verdict rendered was based in whole, or in part, upon information or belief not supported by or deducible from the evidence in the case, but acquired in some other way or from some other source. Or, may the statement of a juror, to the same effect, be given in evidence to impeach his verdict.

While it is insisted that the jury acted improperly in arriving at their verdict in the manner alleged, it is not contended that they acted dishonestly or fraudulently. And it is not averred that their misconduct was so gross, flagrant or culpable as to amount to fraud in law.

There are but two or three cases in this state that have any possible bearing upon this question, and only one that is of any assistance to the court.

In the case of *Hutchinson v. Gordon*, 2 *Harr.* 179, the court, after referring to the case of *Pierce v. Patterson*, permitted the bailiff of the jury to be sworn to prove that the jury, being equally divided, agreed to send for a certain deed of assignment; and in case it was not sent to them, to give a verdict against the party who objected to their having it. It appears from the notes of the case of *Pierce v. Patterson*, given in a foot note, (a) to the *Hutchinson-Gordon case*, that the bailiff, in the former case, was allowed to prove that the jury decided the case by lot. The defendant then offered several of the jury to prove the same thing, but the court said it was unnecessary, "and they would not hastily decide so important a question."

The question we now have was, therefore, not decided in that case. Neither the case of *Johnson v. Porter*, 2 *Harr.* 225, nor that of *Pritchard v. Henderson*, 3 *Penn.* 128, are in point. In the former "the verdict was set aside because the defendant conversed with the jurors after they were sworn; the conversation being unexplained, and the verdict being against the evidence." In *Pritchard v. Henderson* one of the reasons urged for a new trial was "the alleged misconduct of certain counsel for the plaintiff, in holding private conversations with members of the jury, after they were sworn in the case and before the verdict was rendered." It not being shown that any statement was made by the counsel which in any wise affected the verdict the court refused to set it aside.

But there is one case which seems to be directly in point, and that is *State v. Harmon*, 4 *Penn.* 581. This was a criminal case, but we can see no difference between that and a civil case so far as the principle we are considering is concerned. In that case counsel for the defendant produced the Clerk of the Peace, and stated that he proposed to prove by the witness statements which were made by one of the jurors after the verdict was rendered as to how they rendered their verdict.

The court asked counsel if he could "find a case where the

court have allowed a statement impeaching the verdict of the
jury?" Counsel answered, that he knew a "juror could not be
sworn and allowed to impeach his own verdict," and that he had
found a case to that effect, but he contended that a statement
made by a juror to another person might be shown. The court
in ruling upon the question said: "If this were allowed, all a juror
would have to do if he wanted to have a verdict set aside would
be to say to somebody else that it was found irregularly. It would
put the verdict of a jury entirely in the hands of one juror."
*Thompson and Mirriam on Juries*, § 445.

The ruling of the court in the *Harmon case* is decisive of the
one before us, and it impresses us as being entirely safe and sound.
The danger of allowing one juror, or several jurors, to impeach
their verdict, would be infinitely greater than the harm resulting
from the possibility of a verdict being reached in some instances
from information or belief not supported by the evidence. It
would open the door to incalculable trouble, and seriously impair
the value of jury trials. So far as we are informed courts have not
allowed the testimony, or statements of a juror, to impeach his
verdict where it is not shown that the improper conduct which
affected the verdict amounted to fraud, and we are strongly of the
opinion that nothing short of fraud could justify it.

We come now to the last reason urged for granting a new trial,
viz.: "That under the circumstances of the case the verdict was
excessive." This is the ground upon which the defendant seems
chiefly to rely, and the one that has given the court the most
concern.

It is a general principle of law, as the plaintiff states, that the
decision of a jury upon any issue of fact is generally irreversible
and conclusive; and the court will not set aside a verdict founded
on conflicting evidence, though it would have drawn a different
conclusion from that of the jury.

1 *Woolley on Del. Practice*, § 733; *Burton v. Ry. Co.*, 4 *Harr.* 252,
254.

The court always hestitates to grant a new trial, and never
do so unless there appears to be good reasons for doing it. It is
with great reluctance that the court ever disturbs the verdict

of a jury either by setting it aside, or by reducing the verdict, which is sometimes accomplished by ordering a new trial unless the plaintiff will consent to a reduction. It is, however, sometimes done when the verdict seems so excessive as to shock the conscience of the court, or to be the result of undue sympathy, compassion, prejudice, partiality or caprice on the part of the jury. *Winkler v. The Phila. & Reading Ry. Co.*, 4 *Penn.* 80.

The setting aside of a verdict on such grounds is not an unusual proceeding in many other jurisdictions, but it has been in this. It has, however, been done in some cases by the courts of this state and notably in the case of *Winkler v. The Phila. & Reading Ry. Co.* In that case the jury, by their verdict, awarded the plaintiff as damages $8,000, which the court considered excessive within the meaning of the law, and announced that a new trial ought to be granted on that ground. Before ordering the new trial, however, the plaintiff was permitted to make an application for a reduction of the amount of the verdict, whereupon counsel stated that the plaintiff was willing to have the verdict reduced to $5,000. With such understanding the court discharged the rule and refused to grant a new trial.

The court, in determining whether the verdict rendered in any particular case, is, or is not, excessive, are not materially assisted by reference to verdicts rendered in other cases, particularly in other states, because no two cases are identical in the facts. In every case of personal injury the pain and suffering, and the extent and permanency of the injury, are different from those proved in any other case. And yet, we think that verdicts previously rendered in the same state in cases somewhat analogous in their facts and circumstances to the case at bar, are of some aid to the court, however slight it may be, in determining whether the verdict is excessive in that case. Judged by such a standard or test we are clearly of the opinion that the verdict given in this case was excessive.

This is not a case where the court are asked to set aside a verdict founded on conflicting evidence. There was no conflict of evidence respecting the character, extent and permanence of the plaintiff's injuries; and we assume that the evidence produced

was true.    While it appears that the muscles of the plaintiff's right leg above the knee were crushed and that his injuries were serious, permanent and painful, it also appears that there was no loss of any of his senses or limbs, and that the only injury from which he now suffers is that to the muscles of the right leg above the knee.    It also appears that the plaintiff suffers pain only when he places the injured leg in a certain position, and obviously the plaintiff has no difficutly in putting his leg in positions which cause no pain, because his natural actions and appearance in court clearly demonstrated that fact.    We mention these things, only to show that the injuries were not of such a character as to produce anything like total diability, or entire lack of earning capacity.

Dr. Morgan did say that in respect to the ability to move his leg in a certain way, and the pain he would suffer thereby, the plaintiff would probably never be any better than he was at the time of the trial, but he also said he thought his condition in those respects might be improved by electric treatment or surgery.

The jury have passed upon the legal liability of the defendant for the injuries the plaintiff sustained.    That was their peculiar province, and it was exclusively theirs, for the evidence upon that point was conflicting.    Therefore, we do not, and cannot question such liability.    The jury have settled that question.

Neither do we question the fact that the plaintiff's injury was serious, painful, and to some extent probably permanent.    But we are nevertheless of the opinion that the verdict rendered by the jury was excessive, because the evidence, as well as the appearance, and movements of the plaintiff during the trial, clearly indicated that his general health and condition were not seriously affected; that his pain was by no means constant, being suffered only upon a certain movement of the leg; that there were some occupations the duties of which he might discharge without much suffering, if any; and that he still had considerable earning capacity notwithstanding his unfortunate injury which we all deeply deplore.

While we are of the opinion that the court would be constrained to set the verdict aside for the reason mentioned, we also feel that the jury having found that the defendant was negligent

and liable for the plaintiff's injuries, which finding is conclusive in this court, the verdict should not be set aside, and the plaintiff subjected to the expense, trouble and delay of another trial, if he is willing to so reduce the verdict as to make it reasonable and just under the evidence. Has the plaintiff any application to make?

MR. BURCHENAL:—We have talked with the plaintiff in this case, and we are willing to accept the amount of four thousand five hundred dollars.

PENNEWILL, C. J.:—Let the verdict be reduced accordingly.

(By consent of counsel for plaintiff and order of the court, judgment reduced to four thousand five hundred dollars. Same day motion for new trial refused.)